# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

SADAT EL-AMIN                                    CIVIL ACTION

VERSUS                                           NO.  15-1425

N. BURL CAIN                                     SECTION "B"(2)

## REPORT AND RECOMMENDATION

This matter was referred to a United States Magistrate Judge to conduct hearings, including an evidentiary hearing, if necessary, and to submit proposed findings and recommendations for disposition pursuant to 28 U.S.C. §§ 636(b)(1)(B) and (C) and, as applicable, Rule 8(b) of the Rules Governing Section 2254 Cases.  Upon review of the entire record, I have determined that a federal evidentiary hearing is unnecessary.  See 28 U.S.C. § 2254(e)(2).[1]  For the following reasons, I recommend that the instant petition for habeas corpus relief be **DENIED** and **DISMISSED WITH PREJUDICE**.

## I.    FACTUAL AND PROCEDURAL BACKGROUND

The petitioner, Sadat El-Amin, is incarcerated in the Louisiana State Penitentiary in Angola, Louisiana.[2]  On February 17, 2009, El-Amin was charged in Washington

---

[1]Under 28 U.S.C. § 2254(e)(2), whether to hold an evidentiary hearing is a statutorily mandated determination.  Section 2254(e)(2) authorizes the district court to hold an evidentiary hearing only when the petitioner has shown either that the claim relies on a new, retroactive rule of constitutional law that was previously unavailable, 28 U.S.C. § 2254(e)(2)(A)(i), or the claim relies on a factual basis that could not have been previously discovered by exercise of due diligence, 28 U.S.C. § 2254(e)(2)(A)(ii); and the facts underlying the claim show by clear and convincing evidence that, but for the constitutional error, no reasonable jury would have convicted the petitioner. 28 U.S.C. § 2254(e)(2)(B).

[2]Rec. Doc. No. 1.

Parish by bill of information with the forcible rape of M.C.[3]  An amended bill of

information was filed on August 31, 2009, to add a second count of forcible rape of the

same victim.[4]  The Louisiana First Circuit Court of Appeal summarized the facts

determined at trial as follows:

> During the summer of 2008, K.E. and her best friend, M.C.,[5] regularly visited K.E.'s grandmother, Martha El-Amin, in Franklinton, Louisiana.  K.E. and M.C. lived in Covington, Louisiana, with K.E.'s mother, but they frequently visited Franklinton to visit their friends who lived there.[6]  On June 31, 2008, K.E. and M.C., as they often did, spent the night at Ms. El-Amin's home.  The defendant, Martha El-Amin's son, also lived in the home with Ms. El-Amin.  M.C. was very comfortable with K.E.'s family.  She considered Ms. El-Amin to be her grandmother, and looked upon the defendant as her uncle.
>
> On the morning of July 1, 2008, K.E. observed that something appeared to be bothering M.C.  When K.E. asked M.C. what was wrong, M.C. initially denied that anything was bothering her.  However, later, when K.E. insisted that M.C. disclose what was troubling her, M.C. told K.E. that the defendant, K.E.'s uncle, had raped her.  According to M.C., the abuse had occurred earlier that same morning, at approximately 1:00 a.m.  M.C. claimed that the defendant had approached her after everyone else was asleep, pushed her and started taking off her clothing.  The defendant then engaged in oral and vaginal sexual intercourse with M.C. against her will.  M.C. told K.E. she did not scream during the encounter because she was afraid.  M.C. asked K.E. to promise that she would not tell anyone of the abuse.  M.C. explained that she did not want to tell anyone about the rape because she feared that K.E.'s family would hate her.  K.E.

---

[3]St. Rec. Vol. 3 of 7, Bill of Information, 2/17/09.

[4]St. Rec. Vol. 3 of 7, Amended Bill of Information, 8/31/09.

[5]"[footnote 4]  At the time of the offenses, the victim was sixteen years old.  In accordance with LSA R.S. 46:1844(W), the victim herein is referenced only by her initials.  To further protect the identity of the victim, her friend is also referenced by initials."

[6]"[footnote 5]  The evidence established that M.C.'s mother had previously allowed M.C. to live with K.E.'s family after she was forced to relocate after losing her job."

promised to keep her friend's secret.  Later that night, M.C. asked K.E. to stay awake with her all night because she now was afraid of the defendant. K.E. complied.  The teenage girls eventually returned to their home in Covington.

Approximately one and one-half months later, K.E. contacted M.C. (who was no longer living with K.E.'s family) and told her that she planned to tell her mother (the defendant's sister) about the rape.  M.C. cried and told K.E. she did not want to disclose the abuse.  However, on August 17, 2008, K.E. told her mother, L.E., about the rape.  L.E. spoke to M.C. and advised her to tell her mother about the abuse.  M.C. then contacted her mother and explained to her what had happened to her at Ms. El-Amin's home on July 1, 2008.  M.C. was taken to the Franklinton Police Department to report the abuse.

In August 2008, Captain Justin Brown, of the Franklinton Police Department, received information regarding the reported rape.  Captain Brown arranged for M.C. to be interviewed by forensic interviewer, Bethany Case.  During a videotaped interview, M.C. described the incident to Ms. Case just as she had to K.E.  The defendant was eventually arrested and charged with two counts of forcible rape.

State v. El-Amin, No. 2011-KA-0030, 2011 WL 3570012, at *1-*2 (La. App. 1st Cir. 2011) (footnotes in original); State Record Volume 7 of 7, Louisiana First Circuit Opinion, 2011-KA-0030, pages 3-4, June 10, 2011.

El-Amin was tried before a jury on March 22, 24 and 25, 2010, and found guilty as charged on both counts of forcible rape.[7]  At a hearing on July 7, 2010, the state trial court denied El-Amin's motions for a new trial and post-verdict judgment of acquittal

---

[7]St. Rec. Vol. 3 of 7, Trial Minutes, 3/22/10; Trial Minutes, 3/24/10; Trial Minutes, 3/25/10; Jury Verdict (count one), 3/25/10; St. Rec. Vol. 4 of 7, Trial Transcript, 3/22/10; St. Rec. Vol. 5 of 7, Trial Transcript, 3/24/10; St. Rec. Vol. 6 of 7, Trial Transcript, 3/25/10.

based on insufficient evidence.[8]  El-Amin also entered a not guilty plea to the multiple

offender bill previously filed by the State.[9]

At a hearing on September 1, 2010, El-Amin withdrew his former plea and

pleaded guilty to the multiple offender bill.[10]  The court sentenced El-Amin as to count

one to sixty-five (65) years in prison as a second offender to be served without benefit

of probation or suspension of sentence.  The court sentenced him to a concurrent

sentence of forty (40) years in prison as to count two.  The court also denied El-Amin's

motion to reconsider the sentence.[11]

On direct appeal to the Louisiana First Circuit, El-Amin's appointed counsel

asserted two errors:[12] (1) The state trial court erred when it denied the defense motion for

mistrial lodged after a state witness referenced El-Amin's criminal history. (2) The state

trial court erred when it denied the motion for post-verdict judgment of acquittal based

---

[8]St. Rec. Vol. 3 of 7, Multiple Offender Hearing Minutes, 7/7/10; Motion for New Trial, 7/7/10; Motion for Post-Verdict Judgment of Acquittal, 7/7/10; St. Rec. Vol. 6 of 7, Multiple Bill Hearing Transcript, 7/7/10.

[9]St. Rec. Vol. 3 of 7, Multiple Offender Hearing Minutes, 7/7/10; Multiple Bill, 6/1/10; St. Rec. Vol. 6 of 7, Multiple Bill Hearing Transcript, 7/7/10.

[10]St. Rec. Vol. 3 of 7, Multiple Offender Hearing Minutes, 9/1/10; St. Rec. Vol. 6 of 7, Sentencing Transcript, 9/1/10.

[11]St. Rec. Vol. 3 of 7, Multiple Offender Hearing Minutes, 9/1/10; Motion to Reconsider Sentence, 9/1/10; Trial Court Order, 9/1/10; St. Rec. Vol. 6 of 7, Sentencing Transcript, 9/1/10.

[12]El-Amin, 2011 WL 3570012, at *1; St. Rec. Vol. 7 of 7, 1st Cir. Opinion, 2011-KA-0030, 6/10/11.

4

on insufficient evidence. The court affirmed the conviction, habitual offender adjudication and sentence on June 10, 2011, finding no merit in the claims.[13]

The Louisiana Supreme Court denied El-Amin's related writ application on February 17, 2012, without stated reasons.[14]  His conviction and sentence became final when the United States Supreme Court denied his application for writ of certiorari on October 1, 2012.[15]  Giesberg v. Cockrell, 288 F.3d 268 (5th Cir. 2002) (for purposes of the AEDPA, a state conviction becomes final when a petition for certiorari is denied by the United States Supreme Court), cert. denied, 537 U.S. 1072 (2002); Crutcher v. Cockrell, 301 F.3d 656 (5th Cir. 2002); see also, State v. Hoffman, 768 So.2d 592 (La.) (conviction not final until application for writ of certiorari to U.S. Supreme Court is denied), cert. denied, sub nom, Hoffman v. Louisiana, 531 U.S. 946 (2000).

On June 10, 2013, El-Amin signed and submitted an application for post-conviction relief to the state trial court in which he asserted nine grounds for relief:[16] (1) He was denied his right to appellate review and a complete transcript. (2) The State used

---

[13]El-Amin, 2011 WL 3570012, at *1; St. Rec. Vol. 7 of 7, 1st Cir. Opinion, 2011-KA-0030, 6/10/11.

[14]State v. El-Amin, 82 So.3d 281 (La. 2012); St. Rec. Vol. 1 of 7, La. S. Ct. Order, 2011-K-1532, 2/17/12; La. S. Ct. Writ Application, 11-K-1532, 7/12/11.

[15]El-Amin v. Louisiana, __ U.S. __, 133 S. Ct. 128 (2012).

[16]St. Rec. Vol. 7 of 7, Application for Post-Conviction Relief, 6/10/13 (dated 6/12/13).

more peremptory challenges than allowed by law. (3) The State used its peremptory strikes in a discriminatory manner. (4) He was denied effective assistance of counsel when counsel failed to investigate, call impeachment witnesses, obtain an expert to challenge the forensic interviewer, challenge the forensic interviewers credentials, challenge the credibility of the victim and his niece, file pretrial motions, challenge the bill of information on double jeopardy grounds and move to recuse the trial judge. (5) The charges violated the Double Jeopardy Clause. (6) Counsel was ineffective for failing to advise El-Amin about a plea agreement offered by the State. (7) He was denied the right to testify on his own behalf. (8) The former Washington Parish Sheriff entered the courtroom and had ex parte communication with the jurors. (9) Appellate counsel was ineffective in failing to raise crucial errors on appeal.

El-Amin was granted leave to supplement his application and did so by asserting five additional arguments:[17] (1) The evidence was insufficient to support the verdict. (2) The State used its peremptory challenges in a gender discriminatory manner to exclude males from the jury. (3) The state trial court failed properly to charge the jury on lesser included offenses. (4) Prosecutorial misconduct and prejudicial remarks occurred during the opening statements and violated El-Amin's rights to due process and

---

[17]St. Rec. Vol. 7 of 7, Supplemental Memorandum, 8/16/13 (dated 8/13/13); Trial Court Order, 7/2/13.

equal protection. (5) He was denied effective assistance of counsel when counsel failed

to (a) challenge the state's lack of evidence that the victim resisted, (b) object to the lack

of jury charges on the lesser included offenses, and (c) object to the gender make-up of

the jury.

The state trial court summarily dismissed the claims asserted in the original and

amended applications on September 12, 2013.[18]  The Louisiana First Circuit denied El-

Amin's related writ application without stated reasons on February 27, 2014.[19]  The

Louisiana Supreme Court denied El-Amin's writ application and petition for

reconsideration, respectively, by separate orders issued January 9 and April 2, 2015, both

without stated reasons.[20]

## II.   FEDERAL HABEAS PETITION

On April 30, 2015, the clerk of this court filed El-Amin's petition for federal

habeas corpus relief in which he asserted the following grounds for relief:[21] (1) The State

used its peremptory challenges in a gender discriminatory manner to exclude males from

the jury in violation of Batson v. Kentucky, 476 U.S. 79 (1986). (2) He was denied the

---

[18]St. Rec. Vol. 7 of 7, Trial Court Order, 9/12/13.

[19]St. Rec. Vol. 7 of 7, 1st Cir. Order, 2013-KW-1899, 2/27/14; St. Rec. Vol. 1 of 7, 1st Cir. Writ Application, 2013-KW-1899, 10/30/13 (dated 10/29/13).

[20]State ex rel. El-Amin v. State, 157 So.3d 591 (La.), recon. denied, 162 So.3d 392 (La. 2015); St. Rec. Vol. 7 of 7, La. S. Ct. Order, 2014-KH-0692, 1/9/15; St. Rec. Vol. 2 of 7, La. S. Ct. Writ Application, 14-KH-692, 4/2/14 (dated 3/28/14); St. Rec. Vol. 1 of 7, La. S. Ct. Order, 2014-KH-0692, 4/2/15; Petition for Reconsideration, 14-KH-692, 1/28/15 (dated 1/22/15).

[21]Rec. Doc. No. 1.

right to testify on his own behalf. (3) The charges violated the Double Jeopardy Clause. (4) He was denied effective assistance of counsel when counsel failed to investigate, obtain an expert to challenge the forensic interviewer, challenge the forensic interviewers qualifications, challenge the credibility of the victim and his niece, file pretrial motions, challenge the bill of information on double jeopardy grounds, move to recuse the trial judge, and notify petitioner of a plea deal offered by the State. (5) The evidence was insufficient to support the verdict. (6) The state trial court erred in denying the defense motion for mistrial based on the reference to El-Amin's criminal history by a state witness.  (7) Prosecutorial misconduct and prejudicial remarks occurred during the opening statements and violated El-Amin's rights to due process and equal protection. (8) The former Washington Parish Sheriff had ex parte communication with the jurors in the courtroom. (9) The state trial court failed to charge the jury on all lesser included offenses.

    The State filed an answer and memorandum in opposition to El-Amin's petition, arguing that El-Amin's first claim is in procedural default and that the denial of relief by the state courts on that claim and the other eight claims was neither contrary to nor an unreasonable application of Supreme Court law.[22]

    In his reply to the State's opposition, El-Amin urges the court to consider the merits of his claims without deference to the state courts' rulings and reasserts the

---

[22]Rec. Doc. Nos. 14, 15.

arguments in support of each claim.[23]  Throughout the reply, El-Amin also argues that the state courts erred in denying his post-conviction claims without first appointing counsel to assist in developing his claims under Martinez v. Ryan, __ U.S. __, 132 S. Ct. 1309 (2012).

III.   GENERAL STANDARDS OF REVIEW

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. No. 104-132, 110 Stat. 1214, comprehensively revised federal habeas corpus legislation, including 28 U.S.C. § 2254.  The AEDPA went into effect on April 24, 1996[24] and applies to habeas petitions filed after that date.  Flanagan v. Johnson, 154 F.3d 196, 198 (5th Cir. 1998) (citing Lindh v. Murphy, 521 U.S. 320 (1997)).  The AEDPA therefore applies to El-Amin's petition, which, for reasons discussed below, is deemed filed in a federal court on April 24, 2015.[25]

---

[23]Rec. Doc. No. 16.

[24]The AEDPA, which was signed into law on that date, does not specify an effective date for its non-capital habeas corpus amendments. Absent legislative intent to the contrary, statutes become effective at the moment they are signed into law. United States v. Sherrod, 964 F.2d 1501, 1505 (5th Cir. 1992).

[25]The Fifth Circuit has recognized that a "mailbox rule" applies to pleadings, including habeas corpus petitions filed after the effective date of the AEDPA, submitted to federal courts by prisoners acting pro se. Under this rule, the date when prison officials receive the pleading from the inmate for delivery to the court is considered the time of filing for limitations purposes. Coleman v. Johnson, 184 F.3d 398, 401 (5th Cir. 1999), cert. denied, 529 U.S. 1057 (2000); Spotville v. Cain, 149 F.3d 374, 378 (5th Cir. 1998); Cooper v. Brookshire, 70 F.3d 377, 379 (5th Cir. 1995). The official stamp from the prison's Legal Programs Department reflects that El-Amin delivered the petition and accompanying documents to prison officials on April 24, 2015, the same day the documents were emailed to the clerk of court for filing. Rec. Doc. No. 1, p. 16.

9

The threshold questions in habeas review under the amended statute are whether the petition is timely and whether petitioner's claims were adjudicated on the merits in state court; i.e., the petitioner must have exhausted state court remedies and must not be in "procedural default" on a claim.  Nobles v. Johnson, 127 F.3d 409, 419-20 (5th Cir. 1997) (citing 28 U.S.C. § 2254(b), (c)).

The State concedes and I find that El-Amin's petition was timely filed and that state court remedies have been exhausted.  The State also asserts that El-Amin's first claim, regarding the State's alleged discriminatory use of peremptory challenges, was not timely asserted in the state courts and is in procedural default.  I find, however, that the state courts denied relief on this claim without stated reasons, thereby making no reference to any procedural basis for the denial that might give rise to a procedural default bar.

Generally, a federal court will not review a question of federal law decided by a state court if the decision of that state court rests on a state ground that is both independent of the federal claim and adequate to support that judgment.  Coleman v. Thompson, 501 U.S. 722, 731-32 (1991); Glover v. Cain, 128 F.3d 900, 902 (5th Cir. 1997); Amos v. Scott, 61 F.3d 333, 338 (5th Cir. 1995) (citing Harris v. Reed, 489 U.S. 255, 260, 262 (1989)).  In El-Amin's case, each of the state courts denied post-conviction relief on the Batson issue without stated reasons.  None of the state courts invoked or cited a procedural bar to review of this claim.  The United States Supreme Court has

stated that, "[w]hen a federal claim has been presented to a state court and the state court has denied relief, it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary." Harrington v. Richter,  562 U.S. 86, 98 (2011).  The state courts cited no state law principle in El-Amin's case that would indicate that their brief and summary denials were based on procedural grounds.  See Woodfox v. Cain, 609 F.3d 774, 796 (5th Cir. 2010). The State's procedural default argument therefore is not applicable in this case and cannot be accepted.  Accordingly, this report addresses the merits of El-Amin's claims.

IV.   STANDARDS OF A MERITS REVIEW

28 U.S.C. §§ 2254(d)(1) and (2) contain revised standards of review for questions of fact, questions of law and mixed questions of fact and law in federal habeas corpus proceedings.  Nobles, 127 F.3d at 419-20 (citing 28 U.S.C. § 2254(b) and (c)).

Determinations of questions of fact by the state court are "presumed to be correct . . . and we will give deference to the state court's decision unless it 'was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.'"  Hill v. Johnson, 210 F.3d 481, 485 (5th Cir. 2000) (quoting 28 U.S.C. § 2254(d)(2)), cert. denied, 532 U.S. 1039 (2001).  The amended statute also codifies the "presumption of correctness" that attaches to state court findings of fact and the "clear and convincing evidence" burden placed on a petitioner who attempts to overcome that presumption.  28 U.S.C. § 2254(e)(1).

11

A state court's determination of questions of law and mixed questions of law and fact are reviewed under 28 U.S.C. § 2254(d)(1) and receive deference, unless the state court's decision "'was contrary to, or involved an unreasonable application of, clearly established [Supreme Court precedent.]'" Penry v. Johnson, 215 F.3d 504, 507 (5th Cir. 2000) (quoting Miller v. Johnson, 200 F.3d 274, 280-81 (5th Cir.), cert. denied, 531 U.S. 849 (2000)), aff'd in part, rev'd in part on other grounds, 532 U.S. 782 (2001); Hill, 210 F.3d at 485. The United States Supreme Court has clarified the Section 2254(d)(1) standard as follows:

> Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts. Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

Williams v. Taylor, 529 U.S. 362, 405-06, 412-13 (2000); Penry v. Johnson, 532 U.S. 782, 792-93 (2001);  Hill, 210 F.3d at 485. The "critical point" in determining the Supreme Court rule to be applied "is that relief is available under § 2254(d)(1)'s unreasonable-application clause if, and only if, it is so obvious that a clearly established rule applies to a given set of facts that there could be no 'fairminded disagreement' on the question." (citation omitted) White v. Woodall, __ U.S. __, 134 S. Ct. 1697, 1706-07 (2014) (citing Harrington, 562 U.S. at 103, and Knowles v. Mirzayance, 556 U.S. 111, 122 (2009)).  "Thus, 'if a habeas court must extend a rationale before it can apply to the

facts at hand,' then by definition the rationale was not 'clearly established at the time of the state-court decision.'" White, 134 S. Ct. at 1706 (quoting Yarborough v. Alvarado, 541 U.S. 652, 666 (2004)).

"'A federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the state court decision applied [a Supreme Court case] incorrectly.'" Price v. Vincent, 538 U.S. 634, 641 (2003) (quoting Woodford v. Visciotti, 537 U.S. 19, 24-25 (2002)) (brackets in original); Bell v. Cone, 535 U.S. 685, 699 (2002).  Rather, under the "unreasonable application" standard, "the only question for a federal habeas court is whether the state court's determination is objectively unreasonable."  Neal v. Puckett, 286 F.3d 230, 246 (5th Cir. 2002), cert. denied, sub nom, Neal v. Epps, 537 U.S. 1104 (2003).  The burden is on the petitioner to show that the state court applied the precedent to the facts of his case in an objectively unreasonable manner.  Price, 538 U.S. at 641 (quoting Woodford, 537 U.S. at 24-25); Wright v. Quarterman, 470 F.3d 581, 585 (5th Cir. 2006).

V.   ANALYSIS

A.   MARTINEZ:  APPOINTMENTS OF COUNSEL

Although not a specifically numbered or identified claim, throughout his petition El-Amin repeatedly suggests that he is entitled to relief and substantive review of his claims because the state courts did not provide him with assistance of counsel to develop his claims further.  He relies on the United States Supreme Court's decision in Martinez,

132 S. Ct. at 1309, to support his argument.   Contrary to his assertions, however, Martinez does not require state courts to appoint counsel to provide further development of a petitioner's post-conviction claims.

On the contrary, Martinez reiterated the long-standing holding in Coleman, 501 U.S. at 752, that petitioners have no constitutional right to counsel on post-conviction review and that deficient performance by post-conviction counsel does not excuse procedural default.   Martinez only created a narrow exception to that general rule that a state imposed procedural bar to review "'will not bar a federal habeas court from hearing a substantial claim of ineffective assistance at trial if, in the [state's] initial-review collateral proceeding, there was no counsel or counsel in that proceeding was ineffective.'"   Trevino v. Thaler, __ U.S. __, 133 S. Ct. 1911, 1912 (2013) (quoting Martinez, 132 S. Ct. at 1320).   The record before me reflects no state court imposed procedural bar to review of El-Amin's claims, specifically his claims of ineffective assistance of counsel.   In rejecting the State's procedural defense, I have already noted that, because the state courts denied relief without stated reasons, the Supreme Court would require this court on habeas review "to presume[] that the state court adjudicated the claim on the merits. . .."   Harrington,   562 U.S. at 98.   No part of the Martinez holding applies to El-Amin's case or required that he be provided with post-conviction assistance of counsel in the state courts or this federal court to develop his claims further. He is not entitled to relief of this kind.

14

B.   JURY SELECTION (CLAIM NO. 1)

El-Amin alleges that the State used its peremptory challenges in a discriminatory manner to exclude men from the jury in violation of Batson.  He argues that the initial jury pool of 36 people included 21 women and only 15 men, which was not representative of the community.  Of the selected 13 jurors, including the alternate, only two were men.  He suggests that the State intentionally excluded men to cause the selection of a jury comprised mostly of women to hear a case alleging a woman's rape.  El-Amin asserted this issue on post-conviction review and the state courts summarily denied relief.

Construed broadly, El-Amin arguably makes two kinds of claims related to jury selection, the first of which was obscure and understandably overlooked by the State in its opposition.  This first claim arises from his perfunctory comment that the jury venire, the original thirty-six (36) potential jurors, did not represent a fair cross-section of the community.  "'Whether a defendant has been denied his right to a jury selected from a fair cross-section of the community is a mixed question of law and fact, . . .'"  United States v. Suggs, 531 F. App'x 609, 618 (6th Cir. 2013) (citation omitted).  This court must determine whether the state courts' denial of relief on this claim was contrary to, or an unreasonable application of, Supreme Court law.

The Supreme Court has held that, to establish a prima facie violation of the fair cross-section requirement, a defendant must prove that a distinctive group is not fairly

and reasonably represented in a jury venire because of a systematic exclusion in the jury selection process.  Berghuis v. Smith, 559 U.S. 314, 327 (2010); Duren v. Missouri, 439 U.S. 357, 363-64 (1979) (in criminal trials, "venires from which juries are drawn must not systematically exclude distinctive groups in the community and thereby fail to be reasonably representative thereof."); Taylor v. Louisiana, 419 U.S. 522, 527 & 538 (1975).

In this case, El-Amin makes one brief reference to the limited number of men in the venire group and offers no discussion or argument to support the claim.  He has not identified any particular procedure or selection criteria used in Washington Parish which would intentionally exclude males as required to state a fair cross-section claim. El-Amin's unsupported and conclusory statement that there should have been more men in the randomly[26] selected venire group is not sufficient to establish the required prima facie showing.

Furthermore, "[d]efendants are not entitled to a jury of any particular composition."  Taylor, 419 U.S. at 538.  The law is clear that "[d]efendants are not entitled to a jury, jury wheel, pool of names, panel, or venire of any particular composition, and there is no requirement that those bodies 'mirror the community and reflect the various distinctive groups in the population.'"  Hearn v. Cockrell, 73 F. App'x 79, 2003 WL 21756441, at *1, *6 (5th Cir. Jun. 23, 2003) (quoting Taylor, 419 U.S. at

---

[26]St. Rec. Vol. 4 of 7, Trial Transcript, p. 6, 3/22/10 (discussion of the random selection).

538), cert. denied, 540 U.S. 1022 (2003). El-Amin has not established any basis for any court to find that the jury venire in his case was systematically manipulated to exclude men. The denial of relief on this issue was not contrary to or an unreasonable application of federal law.

El-Amin's second, more clearly expressed argument asserts that the State used its peremptory challenges intentionally to exclude men from the seated jury in violation of Batson. In Batson, the Supreme Court held that the Equal Protection Clause forbids a prosecutor from using his peremptory challenges to strike potential jurors solely on the basis of race. Batson, 476 U.S. at 88; see Moody v. Quarterman, 476 F.3d 260, 266-67 (5th Cir. 2007). The Court later extended its Batson ruling to prohibit gender discrimination in the exercise of peremptory challenges. J.E.B. v. Alabama, 511 U.S. 127, 137 (1994).

In a subsequent decision, the Supreme Court has itself outlined the appropriate analysis to be used in addressing a Batson challenge with reference to race, and the analysis is equally applicable to gender:

> A defendant's Batson challenge to a peremptory strike requires a three-step inquiry. First, the trial court must determine whether the defendant has made a prima facie showing that the prosecutor exercised a peremptory challenge on the basis of race. 476 U.S., at 96-97, 106 S.Ct. 1712. Second, if the showing is made, the burden shifts to the prosecutor to present a race-neutral explanation for striking the juror in question. Id., at 97-98, 106 S.Ct. 1712. Although the prosecutor must present a comprehensible reason, "[t]he second step of this process does not demand an explanation that is persuasive, or even plausible"; so long as the reason is not inherently discriminatory, it suffices. Purkett v. Elem, 514 U.S. 765, 767-768, 115

17

S.Ct. 1769, 131 L. Ed.2d 834 (1995) (per curiam).  Third, the court must then determine whether the defendant has carried his burden of proving purposeful discrimination.  Batson, supra, at 98, 106 S.Ct. 1712; Miller-El v. Dretke, 545 U.S. [231, 251-52], 125 S.Ct. 2317, 2331-2332, 162 L. Ed.2d 196 (2005).  This final step involves evaluating "the persuasiveness of the justification" proffered by the prosecutor, but "the ultimate burden of persuasion regarding racial motivation rests with, and never shifts from, the opponent of the strike."  Purkett, supra, at 768, 115 S.Ct. 1769.

Rice v. Collins, 546 U.S. 333, 338 (2006); accord Stevens v. Epps, 618 F.3d 489, 492 (5th Cir. 2010).

In determining whether purposeful discrimination has occurred, the court may consider a number of factors, including (1) the percentage of under-represented panelists who were challenged by the prosecutor with a peremptory strike; (2) comparison of the under-represented panelists who were struck with the over-represented panelists allowed to serve; (3) the prosecutor's use of procedural mechanisms to move members of the under-represented to the back of the panel, where they are less likely to be selected; (4) evidence of a contrast between questions posed to the panelists indicating intent to load questions to make a case to exclude the under-represented panelists; and (5) evidence of a systematic policy or practice within the prosecutor's office of excluding members of the under-represented group as jurors.  United States v. Nelson, 450 F.3d 1201, 1207-08 (10th Cir. 2006) (citing Miller-El v. Dretke, 545 U.S. 231 (2005)).  However, statistics alone are insufficient to prove discrimination in the striking of prospective jurors.  United States v. Branch, 989 F.2d 752, 755 (5th Cir. 1993).

18

A Batson issue is a pure question of fact.  Hernandez v. New York, 500 U.S. 352, 364, 369 (1991).  The state court's answer to "'the ultimate question of discriminatory intent represents a finding of fact of the sort accorded great deference on appeal,'" because the court's answer largely turns on the "evaluation of the prosecutor's credibility."  United States v. Sneed, 34 F.3d 1570, 1579 (10th Cir.1994) (quoting Hernandez, 500 U.S. at 364); accord Rice, 546 U.S. at 338-342; Moody, 476 F.3d at 267 (citing Purkett v. Elem, 514 U.S. 765, 768 (1995)).  "Thus we presume [the state] court's factual findings to be sound unless [petitioner] rebuts the 'presumption of correctness by clear and convincing evidence.' § 2254(e)(1)."  Miller-El v. Dretke, 545 U.S. at 240; Moody, 476 F.3d at 267.

The Supreme Court also emphasized that, pursuant to Section 2254(e), state court factual findings must be given the presumption of correctness, unless the federal court finds that "the trial court's determination of the prosecutor's neutrality with respect to race was objectively unreasonable and has been rebutted by clear and convincing evidence to the contrary."  Miller-El v. Cockrell, 537 U.S. 322, 341 (2003).  In such a case, this court's focus must be on the third step of the Batson test to determine if the factual determination was unreasonable by clear and convincing evidence.  Rice, 546 U.S. at 342;  Moody, 476 F.3d at 266.

In the instant case, the defense did not make a Batson challenge at trial.  The issue was not raised by El-Amin until post-conviction review, where his arguments were, as

19

they are here, without any factual support or information on which such a claim could be supported.  He presents no basis on which the state courts might have ruled differently.  His claim is entirely conclusory and not otherwise supported by fact.

The record discloses no factual basis establishing discriminatory intent or other action taken by the State purposefully to exclude men from the jury.  The trial minutes do not identify the gender of potential jurors on the voir dire panel.[27]  However, the salutations used to address each panelist reflected in the trial transcript indicate that, of the 36 venire members, 21 were women and 15 were men.[28]

During the state trial court voir dire, both the judge and counsel questioned each panel member.  The court called for cause excuses, and then asked for peremptory challenges one juror at a time.  If the State accepted the juror and did not exercise a peremptory challenge, the defense could then accept the person or exercise a peremptory challenge.  If the State exercised a peremptory challenge, the court would move on to the next panelist.  This continued one person at a time through the two panels until twelve jurors and one alternate were seated.

Ten (10) women and eight (8) men were in the first panel of eighteen (18) people questioned.[29]  The State had no challenges for cause.  The <u>defense</u> successfully moved

---

[27]St. Rec. Vol. 3 of 7, Trial Minutes, 3/22/10.

[28]<u>Id.</u>, pp. 10-19, 107-113.

[29]<u>Id.</u>, pp. 8-19.

to excuse one man for cause.[30]  Defense counsel also used five peremptory challenges to remove five of the remaining seven men, and two challenges to excuse two women.[31] The State deemed each of the five men to be acceptable <u>before</u> the defense exercised its peremptory challenges to exclude them.  The State used only one peremptory challenge to excuse a man from that panel, and three challenges to excuse women.[32]

The second panel of eighteen (18) people included eleven (11) women and seven (7) men.[33]  No challenges for cause were made by either side.[34]  Defense counsel used one peremptory challenge to excuse a man and two to excuse women from the panel.[35] The State exercised four non-consecutive peremptory challenges to excuse men from this panel and three to excuse women.[36]  One man in the second panel was left unaddressed or unused when the court reached the number necessary to seat the twelve jurors and one alternate.[37]

---

[30]<u>Id</u>., p. 98.

[31]<u>Id</u>., pp. 100-103.

[32]<u>Id</u>., pp. 102-103.

[33]<u>Id</u>., pp. 105-106.

[34]<u>Id</u>., p. 148.

[35]<u>Id</u>., pp. 148-150.

[36]<u>Id</u>., pp. 148-151.

[37]<u>Id</u>., p. 151.

In sum, through both panels, El-Amin's counsel challenged and excused seven men from the two panels, all of whom had been deemed acceptable by the State, compared to the State's use of five peremptory challenges to excuse men from the two panels. Thus, of the thirteen (13) eligible[38] men on the two panels, the State would have accepted a majority, eight (8) men, but for the one cause and six peremptory challenges utilized by the defense.

In this case, there is no evidence that the State's goal was to exclude men from the jury. Nothing in this record establishes a prima facie case that the State exercised its peremptory challenges purposely to exclude men or to discriminate. See Johnson v. California, 545 U.S. 162, 168 (2005) (To establish a prima facie case of discriminatory striking, a defendant must produce evidence sufficient to "give rise to an inference of discriminatory purpose."). Having reviewed the make-up of the venire, including the random placement of men and women throughout the panel and the use of strikes by both sides, and weighing the factors set out above, Miller-El v. Dretke, 545 U.S. at 231, I find no systematic exclusion of men.

El-Amin has not established that the denial of relief on this claim by the state courts was contrary to or involved an unreasonable application of clearly established federal law. He has not demonstrated unreasonable determination of the facts in light of the evidence. El-Amin is not entitled to relief on this issue.

─────────────────

[38]By eligible, I mean not excused for cause or not needed to complete the jury selection.

C.    NO DOUBLE JEOPARDY (CLAIM NO. 3)

El-Amin argues that the two forcible rape charges exposed him to double jeopardy because they arose from the same incident.  The state courts denied him relief on this claim through post-conviction review.  "A double jeopardy claim is a question of law." Shute v. Texas, 117 F.3d 233, 238 (5th Cir. 1997); see also, Carlile v. Cockrell, 51 F. App'x 483, 2002 WL 31319380, at *1 (5th Cir. 2002).  This court must determine whether the denial of relief on this issue was contrary to or an unreasonable application of Supreme Court precedent.

The Double Jeopardy Clause of the Fifth Amendment protects against (1) a second prosecution for the same offense after acquittal; (2) a second prosecution for the same offense after conviction; and (3) multiple punishments for the same offense.  Brown v. Ohio, 432 U.S. 161, 165 (1977).  El-Amin's claim arguably arises under the third prong because he claims he has been punished for two counts of forcible rape arising from the same incident.  Dual punishment for the same offense is determined by "whether each provision requires proof of an additional fact which the other does not."  Id., at 166 (quoting Blockburger v. United States, 284 U.S. 299, 304 (1932)); Bias v. Ieyoub, 36 F.3d 479, 480 (5th Cir. 1994) (applying Blockburger on habeas corpus review).[39]  To

---

[39]In addition to the Blockburger test, El-Amin also references the "same evidence test" often used by the Louisiana courts. That test considers not only the material elements of each offense but also whether the evidence required to convict of one crime would support conviction of the other. State v. Steele, 387 So.2d 1175, 1177 (La. 1980). However, the United States Supreme Court has actually "disclaimed any intention of adopting a 'same evidence' test" in double jeopardy cases. United States v. Felix, 503 U.S. 378, (1992). Accordingly, a federal habeas court need not address "the same evidence

meet this test, the court must "compare the criminal statutes at issue and inquire whether each provision requires proof of an additional fact that the other does not." United States v. Singleton, 16 F.3d 1419, 1442 (5th Cir. 1994) (citing Blockburger, 284 U.S. at 304); United States v. Fisher, 106 F.3d 622, 632 (5th Cir. 1997); Bias, 36 F.3d at 480.

At the time of these events, the charge of forcible rape under La. Rev. Stat. § 14:42.1 as charged against El-Amin was defined in relevant part as follows:[40]

> A.    Forcible rape is rape committed when the anal, oral, or vaginal sexual intercourse is deemed to be without the lawful consent of the victim because it is committed under any one or more of the following circumstances:
> (1)    When the victim is prevented from resisting the act by force or threats of physical violence under circumstances where the victim reasonably believes that such resistance would not prevent the rape. [. . .]

Louisiana law defines the term "rape" as "the act of anal, oral, or vaginal sexual intercourse with a male or female person committed without the person's lawful consent." La. Rev. Stat. § 14:41(A). "Emission is not necessary, and any sexual penetration ... however slight, is sufficient to complete the crime." La. Rev. Stat. § 14:41(B). The term "oral sexual intercourse means the intentional engaging in any of the following acts with another person: (1) The touching of the anus or genitals of the victim by the offender using the mouth or tongue of the offender. (2) The touching of the anus

_____

test" when resolving a double jeopardy claim. See Harris v. Warden, Louisiana State Penitentiary, No. 12-CV-1731, 2015 WL 5231266, at *12 (W.D. La. Aug. 11, 2015), report and recommendation adopted, 2015 WL 5244413, at *1 (W.D. La. Sep. 8, 2015).

[40]La. Rev. Stat. § 14:42.1 was amended by La. Acts 2015, No. 184, § 1 and No. 256, §1 to redefine forcible rape as second degree rape.

or genitals of the offender by the victim using the mouth or tongue of the victim."  La. Rev. Stat. § 14:41(C).

Thus, to convict El-Amin of forcible rape, the State had the burden of proving as to each count: (1) an act of vaginal, oral or anal intercourse; (2) without the lawful consent of the victim; and (3) where the victim is prevented from resisting the act by force or threats of physical violence under circumstances where the victim reasonably believes that such resistance would not prevent the rape.  State v. Fruge, 34 So.3d 422, 425 (La. App. 3d Cir. 2010) (citing State v. Schexnaider, 852 So.2d 450, 457 (La. App. 3d Cir. 2003)).

In this case, El-Amin was charged with two separate acts of forcible rape.  The trial evidence established that the first act occurred when El-Amin held M.C. down in the chair with her legs up and performed oral sex, then vaginally penetrated her with his penis.  The evidence was that El-Amin left the room for about ten minutes.  When he returned, the second act occurred when he again forced M.C. to have vaginal intercourse.

Under the Blockburger test, the State had to establish the same elements to prove the rape charged under each count.  This does not, however, mean that a double jeopardy violation occurred.  Instead, Blockburger explained that, when different acts violate the same statute, the test of whether the offender has committed one or several offenses simply "'is whether the individual acts are prohibited, or the course of action which they constitute.  If the former, then each act is punishable separately.  . . . If the latter, there

25

can be but one penalty.'" <u>Blockburger</u>, 284 U.S. at 302 (quoting <u>Wharton's Criminal Law</u> (11th Ed.) § 34, n.3). This test hinges on the legislative intent underlying the statute. <u>Blockburger</u>, 284 U.S. at 303.

Applying this reasoning, the Supreme Court has held that the Double Jeopardy Clause prevents a sentencing court from imposing a greater punishment than the legislature intended for a single criminal act but not for different criminal acts. <u>Missouri v. Hunter</u>, 459 U.S. 359, 365 (1983). The <u>Blockburger</u> test is rebuttable based on legislative intent:

> The <u>Blockburger</u> test is a 'rule of statutory construction,' and because it serves as a means of discerning congressional purpose the rule should not be controlling where, for example, there is a clear indication of contrary legislative intent.

<u>Albernaz v. United States</u>, 450 U.S. 333, 340 (1981).

If the state's highest court has held that its legislature intended punishment proscribed in separate statutes or separate parts of the same statute to be punishable cumulatively, cumulative punishment may be imposed, even if the statutes proscribe the same conduct under the <u>Blockburger</u> test. <u>Hunter</u>, 459 U.S. at 368. In that regard, the Supreme Court has made clear that the federal courts are bound to accept the state court's construction of the State's statutes. <u>Id.</u> Thus, when a defendant is convicted of violating one statute multiple times, the question is whether the facts underlying each count were intended by state law to constitute a separate "unit of prosecution." <u>Bell v. United States</u>, 349 U.S. 81, 83-84 (1955).

The Louisiana Supreme Court has concluded that Louisiana law has <u>not</u> adopted a "same transaction test" prohibiting prosecutions for separate criminal acts committed during one sequential, continuing course of conduct.  <u>City of Baton Rouge v. Jackson</u>, 310 So.2d 596, 598 (La. 1975).  Consequently, under Louisiana law, the two separate assaults on M.C. constituted two separate incidents or chargeable acts of forcible rape.  <u>See</u>, <u>e.g.</u>, <u>State v. Pete</u>, 112 So.3d 353 (La. App. 4th Cir. 2013) (along with kidnapping, defendant was charged and convicted of two counts of forcible rape when he detained and forced the victim to have vaginal intercourse, then forced her to perform oral sex, and then forced her to have vaginal intercourse a second time.); <u>State v. Fortune</u>, 54 So.3d 761 (La. App. 4th Cir. 2010) (with other counts, defendant was charged and convicted of two counts of forcible rape when he detained and forced his victim to engage in oral sex and alternating and repeated acts of anal then vaginal intercourse.); <u>State v. Mills</u>, 505 So.2d 933 (La. App. 2d Cir. 1987) (defendant was charged and convicted of nine counts of aggravated rape when he forced the victim to engage in seven acts of vaginal intercourse and two acts of anal intercourse in various rooms in her house during the course of a burglary, with two other acts of oral sex charged as separate crimes against nature.)

Therefore, each separate act of sexual intercourse committed by El-Amin was punishable under the statute, even though both acts included proof of elements under the same statute.  El-Amin has not established a double jeopardy violation.  The state courts'

denial of relief on this issue was not contrary to or an unreasonable application of Supreme Court law.

D.    SUFFICIENCY OF THE EVIDENCE (CLAIM NO. 5)

El-Amin argues that the evidence was insufficient to support the verdict.  He notes that there was evidence that the house was small and his mother was a light sleeper.[41] His mother also slept with her bedroom door open and did not condone her family members engaging in sexual activity in her home.  In addition, his niece who was sleeping in the same room did not hear anything.  He also notes the lack of bruising on the victim and her choice to be quiet during the alleged sexual encounter.  Furthermore, he argues that there was no evidence or testimony of a threat of force or violence.  He concludes that, if intercourse occurred, which he still denies, at best the evidence established a sexual battery.

When El-Amin asserted this claim on direct appeal to the Louisiana First Circuit, the court found the victim's testimony sufficient to establish that a rape occurred under Jackson v. Virginia, 443 U.S. 207, 319 (1979), and related state law.  The state appellate court also noted that El-Amin's claim essentially amounted to a disagreement with the jury's credibility determinations, which the court would not reassess.  This was the last reasoned decision on the issue.  See Ylst v. Nunnemaker, 501 U.S. 797, 802 (1991) (when the last state court judgment does not indicate whether it is based on procedural

---

[41]Rec. Doc. No. 1-1, p. 14.

default or the merits of a federal claim, the federal court will presume that the state court has relied upon the same grounds as the last reasoned state court opinion).  El-Amin asserted the same claim on post-conviction review, and relief was denied at that time without stated reasons at each level of the state courts.

Under Jackson, relied upon by the state appellate court, a federal habeas court addressing an insufficiency of the evidence claim must determine, after viewing the evidence in the light most favorable to the prosecution, whether a rational trier of fact could have found that the essential elements of the crime were proven beyond a reasonable doubt.  Jackson, 443 U.S. at 319; Williams v. Cain, 408 F. App'x 817, 821 (5th Cir. 2011); Perez v. Cain, 529 F.3d 588, 594 (5th Cir. 2008). Thus, to determine whether the commission of a crime is adequately supported by the record, the court must review the substantive elements of the crime as defined by state law.  Perez, 529 F.3d at 594 (citing Jackson, 443 U. S. at 324 n. 16).

The court's consideration of the sufficiency of the evidence extends only to what was presented at trial.  See McDaniel v. Brown, 558 U.S. 120, 131, 134 (2010) (recognizing that a reviewing court must consider the trial evidence as a whole under Jackson); Johnson v. Cain, 347 F. App'x 89, 91 (5th Cir. 2009) (Jackson standard relies "upon the record evidence adduced at the trial") (quoting Jackson, 443 U.S. at 324). Review of the sufficiency of the evidence, however, does not include review of the weight of the evidence or the credibility of the witnesses, because those determinations

29

are the exclusive province of the jury.  United States v. Young, 107 F. App'x 442, 443

(5th Cir. 2004) (citing United States v. Garcia, 995 F.2d 556, 561 (5th Cir. 1993)); see

Jackson, 443 U.S. at 319 (noting that it is the jury's responsibility "to resolve conflicts

in the testimony, to weigh the evidence, and to draw reasonable inferences from basic

facts to ultimate facts").  All credibility choices and conflicting inferences must be

resolved in favor of the verdict.  Ramirez v. Dretke, 398 F.3d 691, 695 (5th Cir. 2005).

A federal habeas court is not authorized to substitute its interpretation of the

evidence or its view of the credibility of witnesses in place of the fact-finder.  Weeks v.

Scott, 55 F.3d 1059, 1062 (5th Cir. 1995); Alexander v. McCotter, 775 F.2d 595, 598

(5th Cir. 1985).  In addition, "[t]he Jackson inquiry 'does not focus on whether the trier

of fact made the correct guilt or innocence determination, but rather whether it made a

rational decision to convict or acquit.'"  Santellan v. Cockrell, 271 F.3d 190, 193 (5th

Cir. 2001) (quoting Herrera v. Collins, 506 U.S. 390, 402 (1993)).

A claim of insufficient evidence presents a mixed question of law and fact.  Perez,

529 F.3d at 594; Maes v. Thomas, 46 F.3d 979, 988 (10th Cir. 1995).  Therefore, this

court must examine whether the state courts' denial of relief was contrary to or an

unreasonable application of United States Supreme Court precedent.

As discussed above, the court must revisit the elements required to prove the crime

of forcible rape under La. Rev. Stat. § 14:42.1 as it was at the time of El-Amin's

prosecution.  To convict El-Amin of each count of forcible rape, the State had to prove:

(1) an act of vaginal, oral or anal intercourse; (2) without the lawful consent of the victim; and (3) where the victim is prevented from resisting the act by force or threats of physical violence under circumstances where the victim reasonably believes that such resistance would not prevent the rape.  La. Rev. Stat. § 14:42.1; La. Rev. Stat. § 14:41; Fruge, 34 So.3d at 425.  Under Louisiana law, the credible testimony of the victim of a sex offense alone is sufficient to establish the elements of the offense, even when the state does not introduce medical, scientific or physical evidence to prove commission of the offense by the defendant.  State v. Hampton, 716 So.2d 417, 418-21 (La. App. 1st Cir. 1998).

In El-Amin's case, the jury heard testimony establishing that, at about 1:00 a.m. on July 1, 2008, M.C. was sitting in an oversized chair in the living room of the house El-Amin shared with his mother.[42]  El-Amin approached and asked M.C. about "fellatio" and whether he could perform fellatio on her.[43]  She told him no.[44]  M.C. knew that was indecent but was not sure what it really meant.[45]  He then moved closer to her and repeatedly requested that she let him perform oral sex.[46]  M.C. attempted to ignore his

---

[42]St. Rec. Vol. 5 of 7, Trial Transcript, pp. 143-145 (M.C.), 3/24/10.

[43]Id., at 155 (M.C.).

[44]Id., at 156 (M.C.)

[45]Id., at 155-56 (M.C.).

[46]Id., at 156-57 (M.C.).

advances and El-Amin grabbed her legs and pulled them over the arm of the chair.[47]

M.C. attempted to back away, but El-Amin "locked" her legs in his arms.[48]  El-Amin then

pulled down M.C.'s shorts and underwear without undoing the zipper or button on her

pants.[49]  When she tried to hold on to the top of her shorts, El-Amin "yanked" her shorts

and underwear off.  At that point, M.C. was able to sit up in the chair, cross her legs

against her chest and cover herself with a blanket.[50]  As she continued to pull away and

squirm, El-Amin grabbed M.C.'s ankles and slid her down into the chair.  M.C. repeated

that she did not want to have sexual intercourse with him and pleaded with him to stop.

Against her will, El-Amin held her by the legs and performed oral sex on her.[51]  M.C.

covered her head with a blanket because she was scared and did not want to see anything;

she just wished she was home with her mother.[52]

    After eight or ten minutes, El-Amin pulled down his pants, held up her legs and

inserted his penis into M.C.'s vagina.[53]  M.C. continued to tell him that she did not want

to have sex with him.  El-Amin continued to hold her legs down and told her to "be

---

[47]Id., at 157-158, 160 (M.C.).

[48]Id., at 160 (M.C.).

[49]Id., at 161-62 (M.C.).

[50]Id., at 162-163 (M.C.).

[51]Id., at 163 (M.C.).

[52]Id., at 163, 166 (M.C.).

[53]Id., at 167-168 (M.C.).

quiet," that "everything was going to be okay."[54]  He continued the intercourse for a long time before he stopped and went to the bathroom.[55]  M.C. remained in the chair scared to get up or move.[56]  El-Amin later returned to the room, grabbed M.C. by her legs again, and slid her in the chair toward him.[57]  M.C. tried to resist by pulling her legs back and pushing herself farther back in the chair.  El-Amin held her legs open and again penetrated her vaginally for another long period of time.[58]  M.C. closed her eyes and wished she was at home with her mother.[59]

This was evidence of persistent physical and verbal resistance by the victim that was eventually overcome by El-Amin's use of physical force in accomplishing sexual intercourse.  Although the force used was not extreme, Louisiana law does not require that the victim suffer physical harm to establish physical force or its threat.  State v. Montana, 533 So.2d 983, 988 (La. App. 1st Cir. 1988), writ denied, 541 So.2d 852 (La. 1989).  The jury obviously found M.C. credible in her consistent statements and testimony about the events that occurred that night.

---

[54]Id., at 168 (M.C.).

[55]Id., at 169-71 (M.C.).

[56]Id., at 171-72 (M.C.).

[57]Id., at 173-174 (M.C.).

[58]Id., at 174 (M.C.).

[59]Id., at 175 (M.C.).

For the foregoing reasons, the evidence viewed in a light most favorable to the prosecution was more than sufficient to establish each element of two counts of forcible rape under Louisiana law.  The state courts' denial of relief was not contrary to or an unreasonable application of <u>Jackson</u>.  El-Amin is not entitled to relief on this claim.

E.   <u>DENIAL OF THE MOTION FOR MISTRIAL (CLAIM NO. 6)</u>

El-Amin asserts that the state trial court erred in denying the defense's motion for mistrial based on the reference to El-Amin's criminal history by a state witness.  He alleges that, in responding to a question posed by the prosecutor, Captain Justin Brown testified that El-Amin was on parole at the time of his arrest for this offense.  He claims this was inadmissible other crimes evidence.  His counsel's request for a mistrial based on the statement was denied, which he claims was contrary to state law and denied him a fair trial.

El-Amin's counsel asserted this issue on direct appeal, and the Louisiana First Circuit found no merit in the claim.  The appellate court held that Louisiana law gave the state trial court discretion to deny the motion since the statement was not so prejudicial that it required a mistrial and the admonition was sufficient.  This was the last reasoned opinion on the issue because the state courts denied relief on post-conviction review of this issue without stated reasons.

El-Amin's contention that the state trial court erred in failing to grant a mistrial under state law is not a proper consideration on habeas review.  <u>See</u> <u>Lavernia v. Lynaugh,</u>

845 F.2d 493, 496 (5th Cir. 1988) (the failure to grant a mistrial is a matter of state law and not one of a constitutional dimension); Haygood v. Quarterman, 239 F. App'x 39, 42 (5th Cir. Jun.14, 2007) (state court's denial of a motion for a new trial does not necessarily constitute a violation of a federal constitutional right) (citing Dickerson v. Guste, 932 F.2d 1142, 1145 (5th Cir. 1991)).  A state court's denial of a motion for mistrial will trigger federal habeas corpus relief only if it was "'error ... so extreme that it constitutes a denial of fundamental fairness under the Due Process Clause.'" Hernandez v. Dretke, 125 F. App'x 528, 529 (5th Cir. Feb. 16, 2005) (quoting Bridge v. Lynaugh, 838 F.2d 770, 772 (5th Cir.1988)).  A trial is fundamentally unfair only when there is a reasonable probability that the verdict might have been different had the trial been properly conducted.  Kirkpatrick v. Blackburn, 777 F.2d 272, 279 (5th Cir. 1985).  A habeas petitioner must show that "the trial court's error had a 'substantial and injurious effect or influence in determining the jury's verdict.'"  Hernandez, 125 F. App'x at 529 (citing Brecht v. Abrahamson, 507 U.S. 619, 623 (1993)).

The question of fundamental fairness at trial under the Due Process Clause presents a mixed question of law and fact.  Wilkerson v. Cain, 233 F.3d 886, 890 (5th Cir. 2000); see Livingston v. Johnson, 107 F.3d 297, 309 (5th Cir. 1997) (whether evidence is admitted or excluded contrary to the Due Process Clause also is a mixed question of law and fact).  The court must determine whether the denial of relief by the state courts was contrary to or an unreasonable application of federal law.

The trial transcript reflects that the prosecutor asked Captain Brown what action he took after presenting the arrest warrant information to the state court judge.  Brown answered: "The judge instructed me to affect an arrest on Sadat Elamin. (sic) We determined that Sadat was currently on parole at that time."[60]  The state trial court sustained the objection by El-Amin's counsel.  Outside of the presence of the jury, El-Amin's counsel moved for mistrial.  The court recessed to allow counsel to research and prepare argument on the issue.  El-Amin's counsel conceded that the mistrial was not mandated by law and was within the trial court's discretion.  Defense counsel also argued that jury would not be able to ignore the fact that El-Amin was a convicted felon, and an admonition to the jury would not suffice to overcome the prejudice.  The state trial court found that the statement was not made with intent to prejudice El-Amin and was not responsive to the prosecutor's question.  The court also found that since no details of any prior crime were given, a mistrial was not warranted and an admonition was proper.  The court thereafter instructed the jury as follows:[61]

> The Court at this time is going to strongly admonish you to disregard the remark by the witness as to parole.  Whether or not such is correct, that has absolutely and totally nothing to do with the trial in this case.  You are strongly instructed to disregard any such reference whatsoever.

On direct appeal, the Louisiana First Circuit found that the admonition was sufficient because the statement was not so prejudicial as to warrant the drastic remedy

---

[60]St. Rec. Vol. 5 of 7, Trial Transcript, p. 46, 3/24/10.

[61]Id., at 56-57.

of mistrial.  On the record before this court, El-Amin has not established that Captain Brown's comment was so prejudicial that it impacted the verdict.  The jury was admonished to ignore the comment and was clearly advised by the state trial court that the comment had nothing to do with the case before them.  I have discussed above the sufficiency of the evidence to establish El-Amin's guilt.  In light of that evidence, El-Amin has not shown that his trial was made unfair by Brown's brief comment, followed by the clear and direct admonition by the state trial court.

The denial of relief on this issue by the state courts was not contrary to or an unreasonable application of Supreme Court law.  He is not entitled to relief on this claim.

F.   NO PROSECUTORIAL MISCONDUCT (CLAIM NO. 7)

El-Amin asserts that the prosecutor made an improper and prejudicial remark during opening statements when he asked the jury to put themselves into the mind of the victim.  He argues that this comment denied him a fair trial.  The state courts denied relief on this issue, which was asserted on post-conviction review.

There is no Supreme Court decision that specifically prohibits a state prosecutor from violating the so-called "Golden Rule" by urging jurors individually to identify with the victim.  Harris v. Warden, La. State Pen., No. 12-cv-1731, 2015 WL 5231266, at *11 (W.D. La. Aug. 11, 2015).  When considered under due process considerations, a prosecutor's comment does not present a claim of constitutional magnitude in a federal habeas action unless it is so prejudicial that the trial was rendered fundamentally unfair

in violation of the Due Process Clause.  Jones v. Butler, 864 F.2d 348, 356 (5th Cir. 1988).  "[I]t is not enough that the prosecutors' remarks were undesirable or even universally condemned.  The relevant question is whether the prosecutors' comments so infected the trial with unfairness as to make the resulting conviction a denial of due process."  Darden v. Wainwright, 477 U.S. 168, 181 (1986) (citations and quotations omitted); accord Rogers v. Lynaugh, 848 F.2d 606, 608 (5th Cir. 1988); Bell v. Lynaugh, 828 F.2d 1085, 1095 (5th Cir. 1987).  The prosecutor's remarks must be evaluated in the context of the entire trial.  Greer v. Miller, 483 U.S. 756, 765-66 (1987) (citing Darden, 477 U.S. at 179); Kirkpatrick, 777 F.2d at 281.

Fifth Circuit precedent requires a two-step analysis when reviewing claims of prosecutorial misconduct.  United States v. Wise, 221 F.3d 140, 152 (5th Cir. 2000); United States v. Lankford, 196 F.3d 563, 574 (5th Cir. 1999).  First, the court must determine whether the prosecutor made an improper remark.  Wise, 221 F.3d at 152.  "If an improper remark was made, the second step is to evaluate whether the remark affected the substantial rights of the defendant."  Id.  A habeas corpus petitioner "must demonstrate that the misconduct [was] persistent and pronounced or that the evidence of guilt was so insubstantial that the conviction would not have occurred but for the improper remarks."  Jones, 864 F.2d at 356; accord Hogue v. Scott, 874 F. Supp. 1486, 1533 (N.D. Tex. 1994).  Under this test, a petitioner must demonstrate that the comment rendered his trial "fundamentally unfair" by showing "a reasonable probability that the

verdict might have been different had the trial been properly conducted." Rogers, 848 F.2d at 609 (footnote and citations omitted).

For purposes of federal habeas review under the AEDPA, El-Amin's claim of prosecutorial misconduct presents a mixed question of law and fact. Brazley v. Cain, 35 F. App'x 390, 2002 WL 760471, at *4 n.4 (5th Cir. Apr. 16, 2002) (citing United States v. Emueqbunam, 268 F.3d 377, 403-04 (6th Cir. 2001); Jones v. Gibson, 206 F.3d 946, 958 (10th Cir. 2000); United States v. Noriega, 117 F.3d 1206, 1218 (11th Cir. 1997); United States v. Spillone, 879 F.2d 514, 520 (9th Cir. 1989)). The court must determine whether the denial of relief was contrary to or an unreasonable application of Supreme Court law.

The prosecutor made the following comments during opening statements at El-Amin's trial:[62]

> And that brings us to here today. The defendant was arrested on Halloween of 2008 for this offense. Almost four months after it took place. You will hear from [M.C.] herself. You will hear from [K.E.]. You will hear from [L.E.]. And what the State wants you to do is listen to the evidence. The State is going to ask you to put yourself into the mind of a 16-year-old girl, because that's what we are dealing with here in this case. And not to impart - -

El-Amin's counsel interrupted to object to the statement. The state trial court sustained the objection because counsel was not allowed to ask the jurors to put

---

[62] St. Rec. Vol. 5 of 7, Trial Transcript, p. 26, 3/24/10.

themselves into the mind of the victim.  The court decided to admonish the jury to disregard the statement:[63]

> Ladies and gentleman, I am going to sustain the objection of the defense attorney at this time and instruct you to disregard the argument that you put yourself into somebody's (sic) else's shoes.  You are judges.  You are independent determining the facts of the case.  So I am going to instruct you to disregard that statement.

I cannot conclude that the single comment by the prosecutor, as to which the state trial court sustained the objection and admonished the jury, so infected the trial as a whole that it was rendered fundamentally unfair.  The prosecutor made a single comment, and the behavior was neither persistent nor pronounced.  When viewed as a whole, the record contains ample evidence apart from the prosecutor's remark upon which the jury justifiably concluded that El-Amin was guilty of forcible rape.  In the overall context of the trial, it cannot be concluded that El-Amin's conviction would not have resulted, but for the prosecutor's single comment during opening statements.

Other courts also have rejected similar claims and denied federal habeas relief when petitioners asserted comparable, or even arguably more egregious, circumstances. Walker v. Quarterman, No. H-07-3108, 2009 WL 497155, at *20-21 (S.D. Tex. Feb. 26, 2009) (citing United States v. Hasting, 461 U.S. 499, 511-12 (1983); Cotton v. Cockrell, 343 F.3d 746, 752 (5th Cir. 2003).  In United States v. Chase, 838 F.2d 743 (5th Cir. 1988), for example, petitioner argued that the prosecutor made "a grossly improper

---

[63]Id., p. 27.

appeal to the jury's emotions and sympathy" when the prosecutor read to the jury during closing argument a poem written by the 14-year-old rape victim and "persuaded the jury to convict on a moral and emotional basis rather than based on their consideration of the relevant evidence." Id., at 749-50.  The court held that the prosecutor was responding to defense counsel's argument that no sexual assault had occurred, that the response was not misconduct in light of the overwhelming evidence of petitioner's guilt, and that petitioner "failed to show that the prosecutor's comments and reading of the Complainant's poem rendered his trial fundamentally unfair." Id.

Under the circumstances of this case, El-Amin has failed to establish that the single comment in the State's opening argument denied him due process or improperly impacted the verdict.  The denial of relief by the state courts on this ground was not contrary to or an unreasonable application of federal constitutional precedent.  El-Amin is not entitled to habeas corpus relief on this claim.

## G.   COMMUNICATION WITH THE JURY (CLAIM NO. 8)

El-Amin alleges that, during closing arguments, the jurors began nodding or gesturing at the former Washington Parish Sheriff who had entered the courtroom.  He claims that the former Sheriff gestured back to the jurors and then sat with another man behind the defense table.  He also claims that the former Sheriff was wearing a visitor's tag from the district attorney's office.  He asserts that these actions constituted ex parte communication with "or other undue influence" on the jurors which is prohibited and

presumptively prejudicial and resulted in juror bias.  He also claims that his counsel did

nothing about it, such as move for a mistrial or object to the ex parte communication.

The latter claim will be addressed below in connection with the ineffective assistance of

counsel claim.  El-Amin first asserted this claim on state post-conviction review, and the

state courts denied relief without stated reasons.

The Due Process Clause guarantees an accused the right to an impartial jury that

will determine guilt based on the evidence and the law as instructed, rather than on

preconceived notions or extraneous information.  Morgan v. Illinois, 504 U.S. 719,

726-27 (1992); Patton v. Yount, 467 U.S. 1025, 1037 n.12 (1984).  "[T]he Supreme

Court has clearly established a constitutional rule forbidding a jury from being exposed

to an external influence."  Oliver v. Quarterman, 541 F.3d 329, 336 (5th Cir. 2008).

However, the Supreme Court has made clear that the Constitution does not mandate a

new trial every time a juror is placed in a potentially compromising but harmless

situation.  United States v. Olano, 507 U.S. 725, 738-39 (1993) (citing Smith v. Phillips,

455 U.S. 209, 217 (1982)).

Under the Sixth Amendment, private contact or communication with a juror that

is related to the trial pending before the juror is "deemed presumptively prejudicial," and

the burden is on the government to prove the contact was harmless.  See Remmer v.

United States, 347 U.S. 227, 229 (1954).  To overcome the presumption, due process

requires the court to "determine the circumstances, the impact thereof upon the juror, and

whether or not it was prejudicial." <u>Remmer</u>, 347 U.S. at 230.  When questionable contact occurs, the trial judge should assess prejudicial impact by questioning jurors directly, with counsel's participation and input.  <u>Smith</u>, 455 U.S. at 217.  "[T]he trial judge is in the best position to evaluate accurately the potential impact of the complained-of outside influence" and that determination can be made without an evidentiary hearing.  <u>United States v. Ramos</u>, 71 F.3d 1150, 1153-54 (5th Cir. 1995).

In the habeas corpus context, a petitioner is <u>not</u> entitled to relief based on an improper third-party contact with the jury "unless the error 'had [a] substantial and injurious effect or influence in determining the jury's verdict.'"  <u>Oliver</u>, 541 F.3d at 341 (alteration in original) (quoting <u>Brecht</u>, 507 U.S. at 637).  Whether a jury was impartial "is a question of federal law; whether a juror can in fact do that is a determination to which habeas courts owe special deference."  <u>Patton</u>, 467 U.S. at 1036-37 & n.12.  The effect of an extraneous communication on a juror's impartiality is a question of "historical fact," <u>Rushen v. Spain</u>, 464 U.S. 114, 120 (1983); <u>Patton</u>, 467 U.S. at 1036-37, and the state courts' determinations in that regard are entitled to a presumption of correctness, unless the petitioner "presents 'clear and convincing' evidence to the contrary."  <u>Ward v. Stephens</u>, 777 F.3d 250, 268 (5th Cir. 2015) (quoting <u>Oliver</u>, 541 F.3d at 342 and 28 U.S.C. § 2254(e)(1)).

In this case, El-Amin has wholly failed to demonstrate that an improper jury contact or communication occurred when, and if,[64] the former Sheriff exchanged silent acknowledgments with a few jurors when he entered the courtroom. The head nods and subtle waves described by El-Amin did not make reference to matters pending in the trial, nor did they concern the facts of the case. At best, El-Amin describes civil pleasantries often exchanged between people, especially with people well-recognized by the public. While courtroom decorum would militate against such pleasantries between a visitor and the jury during trial, no presumption of prejudice or undue influence arises from El-Amin's allegations.

El-Amin also makes an unsupported assumption that the former Sheriff's mere presence influenced the jury against him. Nothing supports this assumption. Although El-Amin claims that he had a "history" with the former Sheriff, he has failed to prove that the jury was made aware of any discord between the two men.

By summarily denying relief at each level, the state courts clearly did not find that there was improper contact or outside influence on the jury or its verdict. El-Amin's assertion to the contrary "lacks 'even fair support in the record,'" Ward, 777 F.3d 250 at 268 (quoting Rushen, 464 U.S. at 120), much less clear and convincing evidence warranting a different conclusion than that reached by the state courts. Other courts have

---

[64]"Inadvertent gestures would not appear in the record. But the fact the record does not reflect anything unusual is not a coherent basis for suggesting something unusual occurred." Riggs v. Kirkegard, No. CV-11-80, 2013 WL 395245, at *5 n.7 (D. Mont. Jan. 11, 2013).

denied mistrials and found no partiality caused by much more egregious jury contamination than that suggested by El-Amin.  See, e.g., United States v. Tejeda, 481 F.3d 44 (1st Cir. 2007) (mistrial denied when two jurors observed a courtroom spectator make a "throat-slitting gesture" towards a witness during his testimony); James v. Walker, No. 99-CV-6191, 2003 WL 22952861, at *6-*8 (E.D.N.Y. Aug. 28, 2003) (no jury taint found after spectator threatened to remember the faces of jurors, the jurors who heard the comment informed other jurors, but did not tell the court they had discussed the incident); Walker v. Keane, No. 97-CV-1853, 1999 WL 552798, at *4-*6 (S.D.N.Y. Jul. 27, 1999) (jurors observed audience members making threatening gestures towards witnesses and overheard individual in a telephone conversation discussing evidence offered at trial).  The state courts' denial of relief on this claim was not contrary to or an unreasonable application of Supreme Court law.  El-Amin is not entitled to relief on this issue.

## H.    JURY CHARGE ON LESSER INCLUDED OFFENSES (CLAIM NO. 9)

El-Amin alleges that the state trial court failed properly to charge the jury on the lesser included offenses applicable to his case under La. Code Crim. P. art. 814. Specifically, he argues that the court did not include instructions to the jury for all of the responsive verdicts for forcible rape provided under La. Code Crim. P. art. 814(A)(10). The state courts denied relief on this claim on post-conviction review without stated reasons.

Whether an offense should be included as a lesser included offense for jury instruction purposes is generally a question of state law.  Ortega v. Stephens, 784 F.3d 250, 253 n.3 (5th Cir. 2015).  This federal court does "not sit as [a] 'super' state supreme court in a habeas corpus proceeding to review errors under state law."  Wilkerson v. Whitley, 16 F.3d 64, 67 (5th Cir. 1994) (quotation omitted); see also Swarthout v. Cooke, 562 U.S. 216, 219 (2011) (federal habeas review does not lie for errors of state law); Estelle v. McGuire, 502 U.S. 62, 67-68 (1991).  The fact that a state court's jury instruction is allegedly incorrect under state law is not a basis for federal habeas relief.  Estelle, 502 U.S. at 71-72; see Galvan v. Cockrell, 293 F.3d 760, 764 (5th Cir. 2002) ("Improper jury instructions in state criminal trials do not generally form the basis for federal relief.")  The proper consideration under federal habeas law is whether the alleged state law error caused "prejudice of constitutional magnitude," such that the error "by itself so infected the entire trial that the resulting conviction violates due process." Galvan, 293 F.3d at 764-65 (citing Cupp v. Naughten, 414 U.S. 141, 147 (1973)); Gilmore v. Taylor, 508 U.S. 333, 342-43 (1993).  The question of fundamental fairness under the Due Process Clause presents a mixed question of law and fact.  Wilkerson, 233 F.3d at 890.

El-Amin alleges that the state trial court failed to charge the jury regarding all of the responsive verdicts under La. Code Crim. P. art. 814.  As an initial matter, there is no United States Supreme Court law which would require a state court to give an

instruction on a lesser included offense in a non-capital case as a matter of a due process. See Valles v. Lynaugh, 835 F.2d 126, 127 (5th Cir. 1988) (citing Alexander, 775 F.2d at 595)) (finding no federal habeas issue arising from failure to include a statutorily allowed responsive verdict); Easter v. Estelle, 609 F.2d 756, 758 (5th Cir. 1980). Nevertheless, under due process considerations, El-Amin has failed to establish any error by the state trial court which rendered the state court proceedings fundamentally unfair.

At the time of El-Amin's conviction, Louisiana law recognized the following exclusive responsive verdicts to the offense of forcible rape: "Guilty. Guilty of attempted forcible rape. Guilty of simple rape. Guilty of attempted simple rape. Guilty of sexual battery. Not guilty." La. Code Crim. P. art. 814(A)(10) (West 2009). The trial transcript reflects that the state trial court did not include the responsive verdicts related to simple rape in its jury instructions.[65] The court instructed the jury that the available verdicts to be returned in the case were: "Guilty. Guilty of attempted forcible rape. Guilty of sexual battery. Not guilty."[66] However, El-Amin has not proven that this was error of constitutional magnitude or a due process violation.

Louisiana law mandates that a trial court, on its own motion or on motion of either party, "shall exclude a responsive verdict" when "the evidence, viewed in the light most favorable to the state, is not sufficient reasonably to permit a finding of guilty of the

---

[65]St. Rec. Vol. 6 of 7, Trial Transcript, p. 94, 3/25/10.

[66]Id., p. 97.

responsive offense."  (emphasis added) La. Code Crim. P. art. 814(C).  Thus, if there is no evidence reasonably supporting a potential verdict, then such a verdict should be excluded by the court as a possible responsive verdict.  See State v. Newton, 973 So.2d 916, 919 n.2 (La. App. 2d Cir. 2007) ("If there is no evidence reasonably supporting a verdict, then such a verdict may be excluded as a possible responsive verdict."); State v. Taylor, 774 So.2d 379, 386-87 (La. App. 2d Cir. 2000) (same), writ denied, 803 So.2d 984 (La. 2001).  In El-Amin's case, there was no reason to include simple rape or attempted simple rape as responsive verdicts.

Louisiana law defined simple rape at all relevant times as a rape committed when the oral, anal or vaginal sexual intercourse is without the lawful consent of a victim who is not the spouse of the offender when it is committed under any one or more of three circumstances: (1) The victim is incapable of resisting or understanding the nature of the act due to the influence of an intoxicating agent or other narcotic not known to the victim or administered by the offender and the offender knew or should have known of the victim's incapacity. (2) The victim is incapable of resisting or understanding the nature of the act due to temporary or permanent unsoundness of mind and the offender knew or should have known of the victim's incapacity. (3) The victim believed the person to be her spouse and that belief was intentionally induced by the offender.  La. Rev. Stat. § 14:43(A) (West 2009).  An attempt to commit a crime, as defined by La. Rev. Stat. § 14:27A, occurs when the person acts with specific intent to commit the crime and does

or omits an act "for the purpose of and tending directly toward the accomplishing of his object . . .."

The record is clear that none of the three circumstances necessary for a simple rape or its attempt existed in this case. No evidence was presented at trial to establish that M.C. was under the influence of an intoxicant, that she was of unsound mind, or that she was married and believed El-Amin to be her husband. Thus, there was no reason for the state trial court to have included simple rape or attempted simple rape as responsive verdicts in El-Amin's case. See Taylor, 774 So.2d at 387 (where there is no evidence to show victim was mentally impaired, intoxicated or of unsound mind, or submitted under the belief that defendant was her husband, it was proper to exclude the simple rape responsive verdict). The responsive verdicts given to the jury at El-Amin's trial were an accurate statement of the applicable law and the only verdicts appropriate for the jury to consider in his case. Clark v. Maggio, 737 F.2d 471, 474 (5th Cir. 1984). His claim fails to demonstrate error or a prejudicial impact on the fundamental fairness of his trial. El-Amin has failed to establish that the state courts denial of relief was contrary to or an unreasonable application of Supreme Court law. He is not entitled to relief on this claim.

I.    EFFECTIVE ASSISTANCE OF COUNSEL (CLAIM NOS. 2 AND 4)

El-Amin alleges that his counsel provided ineffective assistance in multiple ways, including when counsel denied him the right to testify on his own behalf and failed to investigate, obtain an expert to challenge the forensic interviewer, challenge the forensic

interviewers qualifications, challenge the credibility of M.C. and K.E., file pretrial motions, challenge the bill of information on double jeopardy grounds, move to recuse the trial judge, notify petitioner of a plea deal offered by the State and move for a mistrial or object to the former Sheriff's ex parte communication with the jury. The state courts denied relief on all of these arguments on post-conviction review without stated reasons.

The issue of ineffective assistance of counsel is a mixed question of law and fact. Clark v. Thaler, 673 F.3d 410, 416 (5th Cir. 2012); Woodfox, 609 F.3d at 789. Thus, the question before this court is whether the state courts' denial of relief was contrary to or an unreasonable application of United States Supreme Court precedent.

The standard for judging performance of counsel was established by the United States Supreme Court in Strickland v. Washington, 466 U.S. 668 (1984), in which the Supreme Court established a two-part test for evaluating claims of ineffective assistance of counsel, requiring petitioner to prove both deficient performance and resulting prejudice. Strickland, 466 U.S. at 697. The Supreme Court first held that "the defendant must show that counsel's representation fell below an objective standard of reasonableness." Id. at 687-88. Second, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694; United States v. Kimler, 167 F.3d 889, 893 (5th Cir. 1999).

In deciding ineffective assistance of counsel claims, this court need not address both prongs of the conjunctive Strickland standard, but may dispose of such a claim based solely on a petitioner's failure to meet either prong of the test. Kimler, 167 F.3d at 893. A habeas corpus petitioner "need not show that 'counsel's deficient conduct more likely than not altered the outcome in the case.' . . . But it is not enough under Strickland, 'that the errors had some conceivable effect on the outcome of the proceeding.'" (citation omitted) Motley v. Collins, 18 F.3d 1223, 1226 (5th Cir. 1994) (quoting Strickland, 466 U.S. at 693); Harrington, 562 U.S. at 112 (Strickland requires a "substantial" likelihood of a different result, not just "conceivable" one.)

On habeas review, the United States Supreme Court has clarified that, under Strickland, "[t]he question is whether an attorney's representation amounted to incompetence under prevailing professional norms, not whether it deviated from best practices or most common custom." Harrington, 562 U.S. at 105. The Harrington Court went on to recognize the high level of deference owed to a state court's findings under Strickland in light of the AEDPA:

> The standards created by Strickland and § 2254(d) are both "highly deferential," and when the two apply in tandem, review is doubly so. The Strickland standard is a general one, so the range of reasonable applications is substantial. Federal habeas courts must guard against the danger of equating unreasonableness under Strickland with unreasonableness under § 2254(d). When § 2254(d) applies, the question is not whether counsel's

actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied Strickland's deferential standard.

Harrington, 562 U.S. at 105.

Thus, scrutiny of counsel's performance under § 2254(d) is "doubly deferential." Cullen v. Pinholster, 563 U.S. 170, __, 131 S. Ct. 1388, 1403 (2011) (quoting Knowles, 556 U.S. at 123). This court must therefore apply the "strong presumption" that counsel's strategy and defense tactics fall "within the wide range of reasonable professional assistance." Strickland, 466 U.S. at 690.

Federal habeas courts presume that litigation strategy is objectively reasonable unless clearly proven otherwise by the petitioner. Id., 466 U.S. at 689; Geiger v. Cain, 540 F.3d 303, 309 (5th Cir. 2008); Moore v. Johnson, 194 F.3d 586, 591 (5th Cir. 1999). In assessing counsel's performance, a federal habeas court must make every effort to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time of trial. Strickland, 466 U.S. at 689; Neal, 286 F.3d at 236-37; Clark v. Johnson, 227 F.3d 273, 282-83 (5th Cir. 2000), cert. denied, 531 U.S. 1167 (2001). Tactical decisions when supported by the circumstances are objectively reasonable and do not amount to unconstitutionally deficient performance. Lamb v. Johnson, 179 F.3d 352, 358 (5th Cir. 1999), cert. denied, 528 U.S. 1013 (1999) (citing Rector v. Johnson, 120 F.3d 551, 564 (5th Cir. 1997) and Mann v. Scott, 41 F.3d 968, 983-84 (5th Cir. 1994)).

(1)   Right to Testify

As argued by the State, El-Amin's claim that counsel prevented him from testifying is conclusory, unsupported and fails to demonstrate that his counsel actually prevented him from doing so.  It is well settled that a criminal defendant has the right to testify on his own behalf pursuant to the Fifth, Sixth and Fourteenth Amendments.  Rock v. Arkansas, 483 U.S. 44, 49 (1987); Bower v. Quarterman, 497 F.3d 459, 473 (5th Cir. 2007); Sayre v. Anderson, 238 F.3d 631, 634 (5th Cir. 2001); Jordan v. Hargett, 34 F.3d 310, 312 (5th Cir. 1994).  When, as here, the petitioner alleges that his counsel, not the court or the State, prevented him from testifying, the Fifth Circuit has held that the "'appropriate vehicle for such claims is a claim of ineffective assistance of counsel.'" Sayre, 238 F.3d at 634 (quoting United States v. Brown, 217 F.3d 247, 258-59 (5th Cir. 2000)).

A criminal defendant may waive his right to testify if that waiver is knowing, intelligent and voluntary.  Bower, 497 F.3d at 473 (citing Emery v. Johnson, 139 F.3d 191, 198 (5th Cir. 1997)).  A violation of this right occurs only if the "'final decision that [the defendant] would not testify was made against his will.'"  Emery, 139 F.3d at 198 (quoting United States v. Teague, 908 F.2d 752, 759 (11th Cir. 1990)).

A habeas petitioner has the burden of proving that he was denied this constitutional right.  "[A] petitioner in a habeas proceeding cannot prevail on such a claim merely by stating to the habeas court that he told his trial attorney that he wished

to testify and that his attorney forbade him from taking the witness stand."  Turcios v. Dretke, No. H-97-0515, 2005 WL 3263918, at *6 (S.D. Tex. Nov. 29, 2005) (citing Underwood v. Clark, 939 F.2d 473, 475-76 (7th Cir. 1991)); accord Jones v. Cain, No. 10-213, 2010 WL 5375949, at *3 (E.D. La. Dec. 17, 2010) (Vance, J.); Davis v. Quarterman, No. H-06-3606, 2007 WL 1886272, at *6 (S.D. Tex. June 29, 2007).  The Underwood court specifically identified various problems that are bound to arise if habeas petitioners, making similar arguments, are not required to satisfy the required burden of proof.  Underwood, 939 F.2d at 475-76.  Adopting the reasoning in Siciliano v. Vose, 834 F.2d 29, 31 (1st Cir. 1987), the Underwood court recognized that such an assertion, even if made under oath,

> is insufficient to require a hearing or other action on his claim that his right to testify in his own defense was denied him.  It just is too facile a tactic to be allowed to succeed.  Some greater particularity is necessary – and also we think some substantiation is necessary, such as an affidavit from the lawyer who allegedly forbade his client to testify – to give the claim sufficient credibility to warrant a further investment of judicial resources in determining the truth of the claim.

Underwood, 939 F.2d at 475-76; accord Gross v. Knight, 560 F.3d 668, 672 (7th Cir.), cert. denied, 558 U.S. 950 (2009).

Citing Underwood, the Fifth Circuit has

> observed that allowing a bare assertion of a right-to-testify violation to precipitate the further investment of judicial resources is problematic.  See [Underwood, 939 F.2d at 476] . . . (stating that a conclusory assertion by a defendant that his right to testify was denied him is insufficient to require a hearing because "[i]t just is too facile a tactic to be allowed to succeed").  We agree that there is "a grave practical difficulty in establishing a

54

mechanism that will protect a criminal defendant's personal right . . . to testify in his own behalf without rendering the criminal process unworkable."

United States v. Martinez, 181 F.3d 627, 628 (5th Cir. 1999) (quoting Underwood, 939 F.2d at 475).  "While the Fifth Circuit has adopted the general rule of law enunciated in Underwood . . . , the Court has further opined that [summary] dismissal is inappropriate unless the habeas petitioner has first been afforded the opportunity to amend his pleadings to provide the evidence necessary to support his claim."  Savoy v. Cain, No. 06-1744, 2008 WL 276542, at *1 (W.D. La. Jan. 29, 2008) (citing Martinez, 181 F.3d at 629); but see, Silva-Garcia v. United States, No. 10-cr-2224, 2012 WL 5464639, at *4 (S.D. Tex. Nov. 8, 2012) (finding that the Fifth Circuit has not created a right to supplement a bare allegation of right-to-testify).

Of course, under current United States Supreme Court precedent mandated after Martinez and Savoy, a federal habeas court is limited to consideration of the evidence and the record that were before the state courts that reviewed the merits of the claim at issue.  Cullen, 131 S. Ct. at 1400; Blue v. Thaler, 665 F.3d 647, 656 (5th Cir. 2011); Gallow v. Cooper,  505 F. App'x 285, 295-96 (5th Cir. 2012); Thomas v. Thaler, No. 12-50280, 2013 WL 1297269, at *4-*5 (5th Cir. Apr. 2, 2013).  El-Amin provided no

evidence or arguments to the state courts other than those already before this court, and no evidence should be considered for the first time on federal habeas review.[67]

In the instant matter, El-Amin claims that he told his counsel that he wanted to testify to refute the evidence, and counsel would not allow it. In his reply to the State's opposition asserting that this claim is conclusory, El-Amin simply referenced his verified petition as proof that he sought to testify and was denied the opportunity to do so.[68] As indicated in Underwood, however, even a verified petition is insufficient to prove such a claim on habeas corpus review. El-Amin's self-serving allegations fall far short of establishing that counsel prevented him from testifying and suggest only that counsel advised against it. El-Amin's argument, therefore, is in a similar posture as that invalidated and rejected in Underwood. There is nothing in this record sufficient to prove an actual violation of his right to testify.

Furthermore, El-Amin has not established that his counsel's advice that he not testify was unreasonable. As El-Amin admits, he had a prior criminal history and was on parole at the time of his arrest for rape. These are facts he and his counsel sought to

---

[67]El-Amin's counsel has had ample time and opportunity, both while his post-conviction proceedings were pending in the state courts and during the pendency of this federal habeas petition, to pursue or file evidence that would establish that his counsel refused to let him testify. He has failed to do so, or even to suggest that it is conceivable that he could obtain such evidence. Under these circumstances, it appears that no further opportunity to obtain such evidence need be provided by this court, as suggested in the Martinez and Savoy decisions cited and discussed above. El-Amin is free to use the 14-day objection period following entry of this report and recommendation to file such evidence, if he has any, before his claim is dismissed with prejudice.

[68]Rec. Doc. No. 16.

keep from the jury, as discussed above in connection with the defense motion for mistrial based on Captain Brown's reference to El-Amin's parole status.  On the stand, El-Amin would have been exposed to cross-examination regarding his guilt and character, including his prior criminal history, which would have undermined his credibility.  In addition, El-Amin does not indicate, nor has he ever indicated, any specific proposed testimony he might have provided that would have been beneficial to the defense.

Under these circumstances, defense counsel apparently determined that the prejudice posed by potential cross-examination outweighed any benefit El-Amin's testimony might have provided his defense.[69]  El-Amin has not demonstrated that the outcome of the trial would have been different but for counsel's decision to rest the defense without his testimony.

For these reasons, El-Amin has not demonstrated any deficiency or prejudice resulting from counsel's advice that El-Amin not testify.  El-Amin is not entitled to relief on this claim.  Any denial of relief by the state courts on this issue was not contrary to or an unreasonable application of Strickland.

(2)     Pretrial Investigation

El-Amin alleges that his counsel was ineffective when he failed to investigate the scene where the rapes occurred, interview K.E. before trial and delve into M.C.'s past to

---

[69]Counsel consulted with El-Amin off the record before the defense case rested, but the substance of that conversation has not been revealed. St. Rec. Vol. 6 of 7, Trial Transcript, p. 41, 3/25/10.

determine if she had falsely accused anyone else.  He also claims that he provided counsel with the names of potential alibi witnesses, including his girlfriend, and counsel did not interview or call them.

"'A defendant who alleges a failure to investigate on the part of his counsel must allege with specificity what the investigation would have revealed and how it would have altered the outcome of the trial.'" (emphasis added, citation omitted) Moawad v. Anderson, 143 F.3d 942, 948 (5th Cir. 1998); Druery v. Thaler, 647 F.3d 535, 541 (5th Cir. 2011).  A petitioner cannot show prejudice as to a claim that his counsel failed to investigate without adducing what the investigation would have shown.   Diaz v. Quarterman, 239 F. App'x 886, 890 (5th Cir. 2007) (citing Strickland, 466 U.S. at 696, recognizing that some evidence is required to show that "the decision reached would reasonably likely have been different.").  To prevail on such a claim, petitioner must provide factual support showing what exculpatory evidence further investigation would have revealed.  Moawad, 143 F.3d at 948; Brown v. Dretke, 419 F.3d 365, 375 (5th Cir. 2005); Davis v. Cain, No. 07-6389, 2008 WL 5191912, at *10 (E.D. La. Dec. 11, 2008) (order adopting referenced Report and Recommendation).

El-Amin merely speculates that his counsel was unprepared and did not adequately investigate the case or interview defense witnesses.  He is required to present more than conclusory assertions to establish ineffective assistance of counsel.  Green v. Johnson, 160 F.3d 1029, 1042 (5th Cir. 1998) ("Mere conclusory allegations in support of a claim

of ineffective assistance of counsel are insufficient to raise a constitutional issue."). El-Amin has identified <u>no</u> <u>exculpatory</u> evidence or favorable witness testimony that would have been discoverable through more pretrial investigation by counsel. He has not specified what exculpatory information, if anything, further preparation or investigation would have disclosed. The record demonstrates that counsel was well-versed in the design of the home where the crime occurred and had a clear grasp of the close proximity of the rooms and furniture. El-Amin has presented nothing that would establish a need for counsel to have visited the home to prepare for trial.

It is also <u>not</u> enough for El-Amin simply to allege that his counsel should have interviewed and called defense witnesses, including his girlfriend. It is well settled that "'[c]omplaints of uncalled witnesses are not favored, because the presentation of testimonial evidence is a matter of trial strategy and because allegations of what a witness would have testified are largely speculative.'" <u>Graves v. Cockrell</u>, 351 F.3d 143, 156 (5th Cir. 2003) (<u>quoting</u> <u>Buckelew v. United States</u>, 575 F.2d 515, 521 (5th Cir. 1978)); <u>Bray v. Quarterman</u>, 265 F. App'x 296, 298 (5th Cir. 2008). To prevail on such a claim, the petitioner must name the witness, demonstrate that the witness was available to testify and would have done so, set out the content of the witness's proposed testimony, and show that the testimony would have been favorable to a particular defense. <u>Day v. Quarterman</u>, 566 F.3d 527, 538 (5th Cir. 2009) (citing <u>Bray</u>, 265 F. App'x at 298).

The only potential witness El-Amin identified by name was his girlfriend, Jennifer Mathis, whom he claims would have testified that he was with her on the night and at the time of the rapes.  However, testimony of this nature would have directly conflicted with the testimony of El-Amin's own mother, who made clear that El-Amin was at home, sleeping because he had to leave for work in the early morning hours.  Defendant's mother even testified that she saw El-Amin asleep in his bed around 11:00 p.m. when she retired for the night after making his lunch for work the next day.[70]

The entire defense theory, as El-Amin still argues, was that nothing happened and, if it had, his mother would have heard the noise.  Mrs. El-Amin in fact testified that she would have heard any movement in the small modular house and did not hear anything that night.  For El-Amin now to suggest that his counsel should have introduced Mathis as a witness is wholly in conflict with the entirety of the defense case.  "'Failure to present [evidence does] not constitute 'deficient' performance within the meaning of Strickland if [counsel] could have concluded, for tactical reasons, that attempting to present such evidence would be unwise.'"  Williams v. Cockrell, 31 F. App'x 832 (5th Cir. 2002) (quoting Williams v. Cain, 125 F.3d 269, 278 (5th Cir. 1997)).  El-Amin has identified no other potential witnesses who might have provided relevant testimony to support the defense.

---

[70]St. Rec. Vol. 6 of 7, Trial Transcript, p. 15, 3/25/10.

Thus, El-Amin has failed to establish any deficiency or prejudice arising from counsel's investigation, preparedness for trial and decisions regarding presentation of witnesses. The denial of relief on this issue was not contrary to or an unreasonable application of Strickland. He is not entitled to relief on this claim.

(3)    Pretrial Motions

El-Amin alleges broadly that his counsel did not file motions to suppress,[71] for speedy trial or to quash. He also claims that his counsel should have objected to the untimely notice that Captain Brown would testify about a statement El-Amin made to him.

El-Amin offers absolutely no reason why counsel should have filed motions for speedy trial or to suppress or that the motions would have been meritorious. Counsel does not act deficiently in failing to urge a meritless argument. See Smith v. Puckett, 907 F.2d 581, 585 n.6 (5th Cir. 1990) ("Counsel is not deficient for, and prejudice does not issue from, failure to raise a legally meritless claim."); Koch v. Puckett, 907 F.2d 524, 530 (5th Cir. 1990) (concluding that "counsel is not required to make futile motions or objections."); United States v. Gibson, 55 F.3d 173, 179 (5th Cir. 1995) (counsel's failure to file motion to suppress based on faulty search warrant affidavit was not deficient performance because counsel is not required "to file meritless motions").

---

[71]El-Amin's argument regarding the failure to file a motion to suppress K.E.'s statement was assigned as a separate issue and will be addressed later in this report.

As to the notice of Captain Brown's testimony, El-Amin has not established any reason for counsel to have challenged the notice.  As was made clear before trial, the notice was filed only as a precautionary measure in light of the full and complete discovery already conducted.[72]  El-Amin's counsel already knew the content of the statement and acknowledged that El-Amin "just denied it."[73]  This was consistent with the defense theory that nothing happened.  El-Amin has not established any reason for counsel to have made unnecessary challenges to the notice or the testimony.  See Clark v. Thaler, 673 F.3d at 429 ("failure to assert a meritless objection cannot be grounds for a finding of deficient performance"); Wood v. Quarterman, 503 F.3d 408, 413 (5th Cir. 2007) ("'[f]ailure to raise meritless objections is not ineffective lawyering; it is the very opposite'") (quoting Clark v. Collins, 19 F.3d 959, 966 (5th Cir. 1994)); Green, 160 F.3d at 1037 (failure to make a frivolous objection is not deficient performance below an objective level of reasonableness).

Denial of relief on this issue was not contrary to or an unreasonable application of Strickland.  El-Amin is not entitled to relief on this claim.

(4)  Qualifications of the Forensic Interviewer

El-Amin alleges that his counsel should have challenged the qualifications of Bethany Case, who testified as the State's expert on child abuse cases.  He asserts that,

---

[72]St. Rec. Vol. 5 of 7, Trial Transcript, p. 3, 10/24/15.

[73]Id.

under Daubert v. Merill Dow Pharmaceuticals, Inc., 509 U.S. 579 (1983), and related state case law, counsel should have questioned her to determine any bias in favor of the State as a state employee and her training, specialized knowledge and experience as an expert, especially in forensic interviewing.

In Daubert, the United States Supreme Court supplanted the "general acceptance" standard of expert testimony with a standard that charges the trial court to act as "gatekeeper" ensuring the relevance and reliability of scientific expert testimony. Daubert, 509 U.S. at 592.  Once expert testimony is admitted at trial, it is for the jury to resolve the credibility and the reliability of the expert's testimony.  "'[A]s a general rule, questions relating to the bases and sources of an expert's opinion affect the weight to be assigned that opinion rather than its admissibility and should be left for the jury's consideration.'" (emphasis in original) Primrose Operating Co. v. Natl. American Ins. Co., 382 F.3d 546, 562 (5th Cir. 2004) (quoting United State v. 14.38 Acres of Land, 80 F.3d 1074, 1077 (5th Cir. 1996)).

I have located no precedent that would specifically apply these gatekeeping duties as a constitutional matter for habeas corpus purposes to the qualifications of a forensic interviewer or social worker.  Assuming, however, that Daubert applies, an expert's opinion must have a "reliable basis in the knowledge and experience of his discipline." Daubert, 509 U.S. at 592.  "As long as some reasonable indication of qualifications is adduced, the court may admit the evidence without abdicating its gate-keeping function."

Rushing v. Kansas City S. Ry. Co., 185 F.3d 496, 507 (5th Cir. 1999) (citing Daubert, 509 U.S. at 596).  Daubert is clear that critiques of the substance of an expert's testimony and conclusions go to the weight of the testimony, not its admissibility.  United States v. Valencia, 600 F.3d 389, 421 (5th Cir. 2010).

The Louisiana Supreme Court has adopted the Daubert analysis, State v. Foret, 628 So.2d 1116, 1121, 1123 (La. 1993), only in instances where the methodology used by an expert is being questioned.  Dinett v. Lakeside Hospital, 811 So.2d 116, 119 (La. App. 4th Cir. 2002).  This is not the challenge being made by El-Amin.  Instead, in this case, El-Amin challenges the constitutional effectiveness of his counsel's failure to question the qualifications of Case to testify as an expert.

The trial transcript clearly contradicts El-Amin's assertions that his counsel failed in that regard.  As an initial matter, Case was not qualified as an expert in child sexual abuse cases as El-Amin suggests.  She was offered by the State and deemed qualified by the state trial court to be an expert in forensic interviewing and social work.[74]  As to her expertise, Case testified that, at the time, she was a Visiting Fellow at the United States Department of Justice, Office for Victims of Crime, in Washington, D.C.[75]  She received a bachelor's degree in social work from Southeastern Louisiana University and a

---

[74]St. Rec. Vol. 5 of 7, Trial Transcript, pp. 246, 252, 3/24/10.

[75]Id., p. 239.

master's degree in social work from Louisiana State University in 2004.[76] Her career and course work in social work focused on child abuse and neglect issues. She also served as a child protection investigator for the State of Louisiana for about two and one-half years.[77] While earning her master's degree, she interned for a non-profit counseling center providing mental health therapy and therapeutic services. She also was a mental health counselor at Mandeville High School for three school years before becoming a forensic interviewer.[78] For that position, she participated in numerous training courses through Corner House, First Witness, National Children's Advocacy Center and American Prosecutors Research Institute.[79] She worked in the field for three and one-half years and conducted 400-500 interviews.[80] She also had been qualified several times as an expert in both forensic interviewing and social work before El-Amin's case.

After the extensive presentation of her education, training and work history on direct, El-Amin's counsel thoroughly questioned Case about each aspect of her education and training in forensic interviewing and social work. As to forensic interviewing, El-Amin's counsel asked about the purpose and validity of the type of interview she conducted at the Child Advocacy Center as an aid to prosecutors and the use of leading

---

[76]Id., p. 240.

[77]Id., p. 241.

[78]Id., pp. 241-42.

[79]Id., pp. 242-43.

[80]Id., p. 243.

questions by the interviewers to coax responses from the victims.  While satisfied with her extensive training and experience in forensic interviewing, El-Amin's counsel in fact objected to Case's qualifications as an expert in social work because she had no private work experience in that field and only held a degree with no real or practical application.[81]  The court by its expert designation overruled that objection.  The fact that the challenge was not successful does not render counsel's performance constitutionally deficient or prejudicial.  See Martinez v. Dretke, 99 F. App'x 538, 543 (5th Cir. 2004) ("[A]n unsuccessful strategy does not necessarily indicate constitutionally deficient counsel.").  Thus, El-Amin has not established that his counsel performed in a manner that was deficient or prejudicial.  The denial of relief on this issue was not contrary to or an unreasonable application of Strickland.  He is not entitled to relief on this claim.

(5)    No Defense Expert

El-Amin asserts that his counsel should have hired an expert to assist him in questioning the State's expert, Bethany Cross, on her opinion that delayed reporting of abuse is common among abused children.  The law, however, is well settled that an indigent defendant does not have an automatic right to expert assistance, even upon demand.  Yohey v. Collins, 985 F.2d 222, 227 (5th Cir. 1993).  Rather, he must "establish a reasonable probability that the requested experts would have been of assistance to the defense and that denial of such expert assistance resulted in a

---

[81]Id., p. 252.

fundamentally unfair trial." Id.; Griffith v. Quarterman, 196 F. App'x 237, 243 (5th Cir. 2006); see also, Lockhart v. Fretwell, 506 U.S. 364, 372 (1993) (citing Strickland, 466 U.S. at 687). El-Amin has made no showing that the testimony of an expert would have altered the trial or established that a different outcome would have occurred if counsel had obtained an expert.

El-Amin's arguments on this point are wholly speculative. He has identified no actual evidence to contradict the trial evidence or Case's testimony. His counsel took advantage of every opportunity to raise doubt as to the veracity of the rape allegations, including persistent reference to the delayed reporting, and the prosecutorial slant of the interview conducted by Case. El-Amin has presented no proof that an expert was needed or could have offered any specific support to his defense. The fact that his defense was not successful and he was convicted does not mean that counsel's actions were deficient. See Martinez, 99 F. App'x at 543. "[I]t is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable." Strickland, 466 U.S. at 689 (citations omitted).

El-Amin has provided no basis to undermine the deference due his counsel's trial decisions in this regard. The state courts' denial of relief on this claim was not contrary to or an unreasonable application of Strickland. He is not entitled to relief on this claim.

(6)     Challenge to the Credibility of the M.C. and K.E.

El-Amin asserts that counsel should have "insulated" him from the adverse testimony and challenged the credibility of both M.C. and K.E.  He claims that he told his counsel the crime never happened, but his lawyer did no investigation to prove it.  He also suggests that counsel should have moved to suppress K.E.'s statement because she did not see or hear anything and because her statement to police was taken at school without parental consent.

As a rule, counsel's sound evidentiary decisions and choices of arguments fall squarely within the ambit of trial strategy.  See Taylor v. Maggio, 727 F.2d 341, 347-48 (5th Cir. 1984) (decisions whether to present a particular argument or evidence "is presumed to have been the result of strategic choice.").  Federal courts "will not question a counsel's reasonable strategic decisions."  Bower, 497 F.3d at 470.

I have already addressed El-Amin's claim that counsel failed to investigate and prepare for trial and found it conclusory and meritless.  The same is true of his claim that his counsel did not challenge the credibility and testimony of M.C. and K.E.  In this case, the trial transcript establishes that El-Amin's counsel thoroughly questioned each girl to emphasize any possible doubt that the rapes occurred.  El-Amin's counsel repeatedly questioned M.C. about her apparent compliance with the sex acts, failure to call out for help that was nearby and her silence after the event.  Defense counsel used K.E.'s testimony and out-of-court statement to highlight further the fact that K.E. heard and saw

68

nothing from a few feet away.  Based on this defense theory, counsel had no reason to object to or move to suppress K.E.'s testimony and statement.  He instead chose to utilize it to enforce the very crux of El-Amin's "nothing happened" defense.  This was sound and reasonable legal strategy under the circumstances.

The denial of relief by the state courts was not contrary to or an unreasonable application of Strickland.  El-Amin is not entitled to relief on this claim.

(7)   Challenge the Bill of Information on Double Jeopardy Grounds

El-Amin argues that his counsel was ineffective when he failed to challenge the bill of information on double jeopardy grounds.  I have reviewed El-Amin's claim that his two counts of forcible rape violated the prohibition against double jeopardy above and concluded that the claim is without merit.  For these reasons, El-Amin has not shown that his conviction violated the Double Jeopardy Clause or that any motion by counsel would have had merit.  Counsel does not act deficiently in failing to urge a meritless argument or motion.  Smith, 907 F.2d at 585 n.6; Koch, 907 F.2d at 530.  Denial of relief on this issue was not contrary to or an unreasonable application of Strickland.  El-Amin is not entitled to relief on this claim.

(8)   Move to Recuse the Trial Judge

El-Amin alleges that counsel failed to move to recuse the state trial judge on grounds that the judge had been a prosecutor and witness in a previous case against El-Amin, which was eventually dismissed, and was the sentencing judge in El-Amin's 2009

criminal case.  Construed broadly, this argument asserts that the judge must have been biased against him in light of this history.  He also contends that, had counsel moved to recuse the trial judge, another judge would have dismissed the charges against him based on insufficient evidence.

El-Amin has presented no reasons for, and Louisiana law did not require, his counsel to move to recuse the state trial judge.  Under Louisiana law, a trial judge is presumed to be impartial, and the burden is on the defendant to prove otherwise.  <u>State v. White</u>, 968 So.2d 901 (La. App. 2d Cir. 2007); <u>State v. Dooley</u>, 882 So.2d 731 (La. App. 2d Cir. 2004), <u>writ denied</u>, 896 So.2d 30 (La. 2005).  When recusal is requested, the law places the burden on the movant to set forth affirmative allegations of fact to support the grounds for recusal.  <u>State v. Williams</u>, 601 So.2d 1374, 1375 (La. 1992).  Relevant to El-Amin's allegations, La. Code Crim. P. art 671 provides the following grounds on which a trial judge shall be recused:

> A.    In a criminal case a judge of any court, trial or appellate, shall be recused when he:
> (1)    Is biased, prejudiced, or personally interested in the cause to such an extent that he would be unable to conduct a fair and impartial trial;
> [. . .]
> (6)    Would be unable, for any other reason, to conduct a fair and impartial trial.

In this case, El-Amin has identified no particular indications in the record that would indicate bias, prejudice or impartiality on the part of the state trial judge.  El-Amin's interpretation of the alleged "history" between the two men is not enough.  <u>State</u>

v. Montgomery, 158 So.3d 87, 90-91 (La. App. 3rd Cir. 2014) (defendant's claim of "historical 'bad blood'" between himself and the trial judge was unsupported and conclusory and did not support a finding of impartiality.).  The transcripts and orders in El-Amin's case disclose no comment or remark that would lead reasonable counsel to believe that the state trial judge was biased, prejudiced or impartial against El-Amin in any way.  Mere conclusory allegations of bias and prejudice do not provide a basis for recusal under Louisiana law.  See State in Interest of M.J., 160 So.3d 1040, 1055-56 (La. App. 4th Cir. 2015) (finding allegation of bias and prejudice to be "subjective and conclusory" where the trial judge provided objective reasons for his rulings and made no statements to support a finding of actual bias or prejudice).  El-Amin's conclusory and subjective beliefs that the state trial judge held a bias against him are unsupported by the record.

In addition, El-Amin cannot establish that recusal would have resulted in another judge dismissing the charges against him for lack of evidence.  The sufficiency of the evidence was determined at trial by the jury and affirmed by the higher state courts (and this federal court) on subsequent review.  There is no reason to believe that another state judicial officer would have dismissed the charges against El-Amin.

El-Amin has failed to establish that his counsel had reason to seek recusal of the state trial judge or that a motion to recuse would have been successful.  Counsel does not act deficiently in failing to file a meritless motion.  Smith, 907 F.2d at 585 n.6; Koch, 907

F.2d at 530.  The denial of relief on this issue was not contrary to or an unreasonable application of Strickland.  El-Amin is not entitled to relief on this issue.

(9)   Notify Petitioner of a Plea Deal

El-Amin asserts that his counsel failed to notify him that the State offered a five year prison sentence in return for a guilty plea in his criminal case.  He contends that he eventually learned that counsel had told his sister about the offer but did not communicate it to him.

"[A]s a general rule, defense counsel has the duty to communicate formal offers from the prosecution to accept a plea on terms and conditions that may be favorable to the accused."  Missouri v. Frye, __ U.S. __, 132 S. Ct. 1399, 1408 (2012).  To prove a related ineffective assistance of counsel claim, a petitioner must show both that counsel failed to disclose the plea offer and that he was prejudiced by counsel's failure.  Id., at 1409-10.  A petitioner establishes prejudice if he can prove a reasonable probability that he would have accepted the plea offer, the plea would have been entered without the prosecution canceling it or the trial court refusing to accept it, and "the end result of the criminal process would have been more favorable by reason of a plea to a lesser charge or a sentence of less prison time."  Frye, 132 S. Ct. at 1409; Lafler v. Cooper, __ U.S. __, 132 S. Ct. 1376, 1385 (2012).

El-Amin has presented and the record contains nothing to indicate that a plea offer was made by the State or that El-Amin's counsel failed to communicate a plea offer from

the State.  As addressed in the State's opposition memorandum, El-Amin did not present to the state courts any evidence or an affidavit from his sister to support this claim.  He still has offered no proof that such an offer was made or conveyed to his sister, although he claims that his sister would have testified (and still will testify) at a post-conviction hearing if the state courts had not dismissed his claims.  To whatever extent El-Amin may be requesting a federal evidentiary hearing on this claim, he is not entitled to one.

As determined by the Supreme Court in Cullen, 131 S. Ct. at 1400-01, the decision to hold an evidentiary hearing is a statutorily mandated determination limited by the provisions of Section 2254(e)(2).  The statute restricts evidentiary hearings to those instances in which the claim relies on a new rule of law retroactively applied on collateral review for which the predicate could not have been previously discovered with due diligence and the facts would be sufficient to undermine a guilty verdict by clear and convincing evidence.  The Cullen Court recognized that when these requirements are not met, evidence presented for the first time may not be considered on federal habeas review to address the merits of the claims under Section 2254(d)(1).  Id.  Thus, a federal habeas court is limited to review of the evidence and record that was before the state courts.  Cullen, 131 S. Ct. at 1400; Blue, 665 F.3d at 656; Gallow,  505 F. App'x at 295-96; Thomas, 2013 WL 1297269, at *4-*5.

In this case, El-Amin has not based his claims on a new, retroactive rule of law under the provisions of Section 2254(e)(2).  He has made no showing of entitlement to

relief from his conviction by clear and convincing evidence undermining his guilt.  For the reasons discussed above in this report, he has failed to establish his entitlement to any federal habeas relief.  There is no basis for this court to conduct an evidentiary hearing or to accept new evidence not previously before the state courts.

There is no proof or support for El-Amin's claims that his counsel failed to communicate a plea offer to him and that failure resulted in prejudice.  "Absent evidence in the record, a court cannot consider a habeas petitioner's bald assertions on a critical issue in his pro se petition, unsupported and unsupportable by anything else contained in the record, to be of probative evidentiary value."  Ross v. Estelle, 694 F.2d 1008, 1011 (5th Cir. 1983) (citing Woodard v. Beto, 447 F.2d 103 (5th Cir. 1971); Schlang v. Heard, 691 F.2d 796 (5th Cir. 1982).  El-Amin's conclusory and unsupported arguments do not establish the existence of a favorable plea offer or that his criminal proceeding would have ended in a more favorable manner.  Most significantly, at no point does El-Amin clearly state that he would have accepted the alleged plea offer and professed his guilt as required for relief under Frye.  This is emphasized by his persistent claims of innocence and that "nothing happened" that night.  See, e.g., Banks v. Cain, No. 14-2554, 2015 WL 1133242, at *6 (W.D. La. Mar. 12, 2015) (Order adopting report and recommendation) ("Considering Petitioner's resolute proclamations of innocence at sentencing, throughout the state court proceedings, and in the instant proceeding, the trial

court's decision to reject Petitioner's [Frye] claim on the basis that he did not suffer any prejudice was not unreasonable.)

Having failed to prove any of the factors pronounced in Frye, El-Amin has not shown that the state courts denial of relief on this issue was contrary to or an unreasonable application of Frye or Strickland.  He is not entitled to relief on this claim.

(10)   No Challenge Made to the Former Sheriff's Communication with the Jury

El-Amin claims that his counsel failed to object to or move for mistrial based on communication by the former Sheriff to the jurors in the courtroom.  As discussed above, any vague salutations momentarily exchanged in the courtroom (if any) between the former Sheriff and a few jurors did not amount to a prohibited ex parte communication. As such, counsel had no basis to object or move for a mistrial and was not ineffective for failing to assert a baseless argument.  See Smith, 907 F.2d at 585 n.6; Koch, 907 F.2d at 530.  The denial of relief on this issue was not contrary to or an unreasonable application of Strickland.  El-Amin is not entitled to relief on this claim.

## RECOMMENDATION

For the foregoing reasons, it is **RECOMMENDED** that El-Amin's petition for issuance of a writ of habeas corpus under 28 U.S.C. § 2254 be **DENIED** and **DISMISSED WITH PREJUDICE**.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within fourteen

(14) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object.  Douglass v. United Servs. Auto. Ass'n, 79 F.3d 1415, 1430 (5th Cir. 1996) (en banc) (citing 28 U.S.C. § 636(b)(1)).[82]

New Orleans, Louisiana, this _____22nd_____ day of January, 2016.

JOSEPH C. WILKINSON, JR.
UNITED STATES MAGISTRATE JUDGE

---

[82]Douglass referenced the previously applicable ten-day period for the filing of objections. Effective December 1, 2009, 28 U.S.C. § 636(b)(1) was amended to extend the period to fourteen days.