**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA**

SADAT EL-AMIN                                    CIVIL ACTION

VERSUS                                           NO. 15-1425

N. BURL CAIN                                     SECTION "B"(2)

<u>ORDER AND REASONS</u>[*]

I.   **NATURE OF PETITION AND RELIEF SOUGHT**

Before the Court is Petitioner's, Sadat El-Amin, petition pursuant to 28 U.S.C. § 2254 for writ of habeas corpus (Rec. Doc. 14), Respondent's, Warden N. Burl Cain, opposition thereto (Rec. Doc. 15), as well as the Report and Recommendation issued by U.S. Magistrate Judge Joseph C. Wilkinson, Jr., recommending that the petition be dismissed with prejudice (Rec. Doc. 17). Also before the Court is Petitioner's timely filed objections to the Magistrate's ruling. (Rec. Doc. 20).

For the reasons enumerated below, it is **ORDERED** that the Magistrate's Report and Recommendation is **ADOPTED, overruling objections**; and the instant petition is **DISMISSED WITH PREJUDICE.**

II.  **FACTS AND PROCEDURAL HISTORY**

Petitioner is incarcerated within the Louisiana State Penitentiary in Angola, Louisiana. (Rec. Doc. 1). On February 17, 2009, Petitioner was charged in Washington Parish with the forcible rape of M.C. (St. Rec. Vol. 3.) On August 31, 2009, an amended

---

[*] We are grateful for work on this matter by Samantha Spitale, a Loyola University New Orleans College of Law intern with our Chambers.

bill of information was filed, which added a second count of forcible rape of the same victim. (St. Rec. Vol. 3). A summarized version of the facts determined at trial, a complete list of the procedural history, and a complete list of citations to the trial court's record may be found in the Magistrate Judge's Report and Recommendation.  (Rec. Doc. 17).

Petitioner was tried before a jury on March 22, 24, and 25, 2010, and found guilty as charged on two counts of forcible rape. (St. Rec. Vol. 3).  Petitioner's motion for a new trial and post-verdict judgment based on insufficient evidence was denied by the state trial court on July 7, 2010.  (St. Rec. Vol. 3). Petitioner also plead guilty to the multiple offender bill previously filed by the State on September 1, 2010.  (St. Rec. Vol. 3).  The Court sentenced Petitioner to sixty-five (65) years in prison as to Count 1 as a second offender to be served without the benefit of probation or suspension of sentence, to a concurrent sentence of forty (40) years in prison as to Count 2, and denied Petitioner's motion to reconsider the sentence.  (St. Rec. Vol. 3).

Petitioner appealed to the Louisiana First Circuit, asserting (1) that the trial court erred when it denied Petitioner's motion for a mistrial logged after a state witness referenced Petitioner's criminal history and (2) that the trial court erred when it denied the motion for a post-verdict judgment of acquittal based on insufficient evidence. *State v. El-Amin*, No. 2011-KA-0030, 2011 WL

3570012, at *1 (La. Ct. App. 1st Cir. June 10, 2011).  The court affirmed the conviction, the habitual offender adjudication, and sentence on June 10, 2011. *Id.* The Louisiana Supreme Court denied his related writ application on February 17, 2012 and the United States Supreme Court denied Petitioner's application for writ of certiorari on October 1, 2010.  *El-Amin v. Louisiana*, 133 S. Ct. 128 (2012).

Petitioner also submitted an application for post-conviction relief to the state trial court. (St. Rec. Vol. 7).[1] The state trial court summarily dismissed these claims on September 12, 2013. (St. Rec. Vol. 7).  The Louisiana First Circuit similarly denied Petitioner's writ application on February 27, 2014. (St. Rec. Vol. 7).  Finally, the Louisiana Supreme Court denied Petitioner's writ application and petition for reconsideration by separate orders issued January 9, 2015 and April 2, 2015. *State ex rel. El-Amin v. State*, 157 So.3d 591 (La.), *reconsideration denied*, 162 So.3d 392 (La. 2015).

Petitioner has since filed the instant petition for federal habeas corpus relief. (Rec. Doc. 1). Petitioner's habeas allegations are as follows: (1) the State's use of its peremptory challenges improperly discriminated based on race and gender in order to exclude males from the jury; (2) Petitioner was denied

---

[1] The full list of Petitioner's claims for post-conviction relief purposes are listed in the Report and Recommendation. (Rec. Doc. 17. at 5-7).

his right to testify; (3) Petitioner was charged twice for a single incident involving a single victim, in violation of the Double Jeopardy Clause; (4) Petitioner was denied effective assistance of counsel when counsel failed to investigate, obtain an expert, challenge a forensic interviewer's qualifications, challenge the credibility of the victim and the Petitioner's niece, file pretrial motions, challenge the bill of information on double jeopardy grounds, move to recuse the trial judge, and notify Petitioner of a plea deal; (5) the evidence was insufficient to support the verdict; (6) the trial court erred in denying Petitioner's motion for mistrial based on a state witness's reference to Petitioner's criminal history; (7) there was prosecutorial misconduct and prejudicial remarks occurred during the State's opening statement; (8) a former sheriff had ex parte communication with the jurors in the courtroom; and (9) the state trial court failed to charge the jury on all lesser included offenses. (Rec. Doc. 1).  The State filed an answer and memorandum, denying all allegations in Petitioner's § 2254 habeas petition.  (Rec. Doc. 14).  The State argues that Claim 1 is in procedural default, while the other eight claims are not contrary to nor are they an unreasonable application of Supreme Court law.  (Rec. Doc. 14).

**III. MAGISTRATE'S REPORT AND RECOMMENDATION**

The Magistrate Judge addressed each of Petitioner's above-mentioned habeas allegations. (Rec. Doc. 17).  Additionally, the

Magistrate Judge analyzed an unenumerated claim, in which Petitioner asserted that he should be given relief and substantive review of his claims because he was not provided with counsel to further develop his claims. (Rec. Doc. 17 at 13).  The Magistrate Judge ultimately dismissed each of Petitioner's claims. (Rec. Doc. 17 at 1). Accordingly, the Magistrate Judge recommended that Petitioner's petition for habeas corpus relief be denied and dismissed with prejudice. (Rec. Doc. 17 at 1).

## IV.  PETITIONER'S OBJECTIONS

Petitioner objects to the Magistrate's Report and Recommendation. In his objection, Petitioner argues that the following grounds justify relief, most of which are largely restatements of the arguments in his § 2254 petition:  1) Petitioner's Sixth Amendment rights were violated when the State used its peremptory challenges to exclude males from the jury; 2) Petitioner was wrongfully charged twice for the same incident stemming from the same facts with a single victim in violation of the Double Jeopardy Clause; 3) the evidence was insufficient for a conviction of forcible rape; 4) the trial court abused its discretion in denying Petitioner's Motion for Mistrial after a testifying witness for the State revealed to the jury that Petitioner was on parole at the time of his arrest; 5) Petitioner's Sixth and Fourteenth Amendment rights were violated by prosecutorial misconduct during the State's opening statement; 6)

ex parte communication occurred between a former sheriff and the jurors, which prejudiced the jury against Petitioner; and 7) the trial court failed to charge the jury properly with lesser included offenses. Further, Petitioner alleges various ineffective assistance of counsel claims to be detailed below.

## V.   STANDARD OF REVIEW

The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) controls this Court's review of a § 2254 petition.   The threshold questions are whether the petition was timely filed and whether the claims raised by the petitioner were adjudicated on the merits in a state court; that is, a petitioner must have exhausted state court remedies and must not be in "procedural default" on a claim. *Nobles v. Johnson*, 127 F.3d 409, 419-20 (5th Cir. 1997)(citing 28 U.S.C. § 2254 (b)(c)).

When considering a pure question of fact, the Court presumes factual findings to be correct and defers to the state court's decision unless it "was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding." 28 U.S.C. § 2254(d)(2)-(e)(1)(requiring "clear and convincing evidence" to rebut that presumption). When considering a pure question of law or a mixed question of fact and law, the Court defers to the state court's decision unless it was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the

United States." 28 U.S.C. § 2254 (d)(1).

Portions of a magistrate's report and recommendation to which Petitioner objects are reviewed de novo. Fed. R. Civ. P. 72(3). As Petitioner objected to most of the Magistrate Judge's findings, the Court will review the entirety of the Report and Recommendation.

## VI.  DISCUSSION

Petitioner has reorganized his objections to match the Report and Recommendation's order.  For clarity's sake, they are presented here in the same order as the Report and Recommendation.

### A. Jury Selection

In his habeas petition, Petitioner briefly states that potential jurors were excluded because of their race. (Rec. Doc. 1 at 30)("Potential jurors were excluded because of their race . . . mainly, African Americans."). Petitioner provides no support for this assertion, nor was this allegation mentioned in the Report and Recommendation or Petitioner's Objection. Accordingly, Petitioner is not entitled to relief on this issue.

More particularly, Petitioner claims that the State used its peremptory challenges to exclude men from the jury in violation of *Batson v. Kentucky*, 476 U.S. 79, 89 (1986). In *Batson*, the Supreme Court held that the Equal Protection Clause prohibits prosecutors from challenging potential jurors solely on account of their race. *Batson*, 476 U.S. at 89.  The Supreme Court later extended this

7

prohibition to include gender discrimination. *J.E.B. v. Alabama*, 511 U.S. 127, 130-31 (1994).

To satisfy this claim, Petitioner must make a prima facie showing that the prosecutor exercised a peremptory strike on the basis of gender. *Id.* at 144. To establish a prima facie showing, Petitioner must show that the totality of the circumstances leads to "an inference of discriminatory purpose." *Johnson v. California*, 545 U.S. 162, 168 (2005). If Petitioner successfully makes a prima facie showing that the prosecutor exercised a peremptory strike on the basis of gender, the prosecutor must "explain the basis of the strike." *J.E.B.*, 511 U.S. at 145. From there, the Court must determine whether Petitioner has proven "purposeful discrimination." *Batson*, 476 U.S. at 98.

In the present case, only two of the thirteen total jurors (including one alternate) were male. (Rec. Doc. 1 at 31). Petitioner alleges that the State's decision to strike five male potential jurors was motivated by the State's desire to have more women on the jury. (Rec. Doc. 20 at 2). Petitioner argues that because each of those five potential jurors "promptly and willingly" answered the prosecutor's questions, the prosecutor must have struck these individual because of their gender. (Rec. Doc. 20 at 3).

Petitioner's conclusory assertions are not enough to allow an inference of discriminatory purpose. Additionally, Petitioner's

counsel used peremptory strikes on <u>seven</u> potential male jurors, which contributed to the gender disparity on the jury. Petitioner provides no convincing evidence to show that the Prosecutor's peremptory strikes were made for gender-motivated reasons. Because Petitioner failed to make a prima facie showing of gender discrimination, Petitioner is not entitled to relief on this issue.

B. <u>Double Jeopardy Claim</u>

Petitioner argues that he has been exposed to double jeopardy because he was charged with two forcible rape charges. The Double Jeopardy Clause protects against "a second prosecution for the same offense after acquittal," "a second prosecution for the same offense after conviction," and "multiple punishments for the same offense." *Brown v. Ohio*, 432 U.S. 161, 165 (1977)(quoting *North Carolina v. Pearce*, 395 U.S. 711, 717 (1969)). Petitioner's argument arises under the third circumstance.

Petitioner references two separate double jeopardy tests: the "same evidence" test and the *Blockburger* test. (Rec. Doc. 1 at 38). Louisiana courts more frequently use the "same evidence" test. *Hampton v. Warden Louisiana State Penitentiary*, No. 10-CV-0990, 2013 WL 5673622, at *1, *3 (W.D. La. Oct. 17, 2013).[2] Accordingly, Petitioner cites to it more heavily. (Rec. Doc. 20 at 4). However, the Supreme Court has "disclaimed any intention of

---

[2] The "same evidence" test considers whether the evidence necessary to convict a defendant of one crime would also support convicting that defendant of another crime. *State v. Steele*, 387 So.2d 1175, 1177 (La. 1980).

adopting a 'same evidence' test in double jeopardy cases." *United States v. Felix*, 503 U.S. 378, 386 (1992). Therefore, a federal habeas court does not need to apply the "same evidence" test when considering a double jeopardy claim. *Hampton*, No. 10-CV-0990 at *3.

The alternate test for double jeopardy is the *Blockburger* test. Under *Blockburger*, if the same act "constitutes a violation of *two distinct statutory provisions*," one must "compare the criminal statutes at issue and inquire whether each provision requires proof of an additional fact that the other does not." *Blockburger*, 284 U.S. at 304 (emphasis added). The acts in this case violate the <u>same</u> statutory provision, La. Rev. Stat. § 14:42.1. (Rec. Doc. 17 at 24).

Petitioner alleges that double jeopardy has occurred because he was charged with two counts of forcible rape, stemming from a "single date" and "single occurrence." (Rec. Doc. 1 at 37). However, the trial evidence established that there were in fact two separate acts of forcible rape. (St. Rec. Vol. 5 at 173-174). The first act occurred when Petitioner performed oral intercourse on M.C. against her will, and then forced M.C. to have vaginal intercourse. (St. Rec. Vol. 5 at 163, 167-168). After this act, Petitioner left the room. (St. Rec. Vol. 5 at 170). Approximately ten minutes later, Petitioner returned to the room and forced M.C.

10

to have vaginal intercourse again, which constitutes the second act of forcible rape. (St. Rec. Vol. 5 at 173-174).

These two separate assaults constitute two chargeable acts of forcible rape. *See, e.g.*, *State v. Pete*, 2012-0378 (La. App. 4 Cir. 3/20/13); 112 So.3d 353 (holding that Defendant was properly charged and convicted of two counts of forcible rape when he forced the victim to have vaginal intercourse, then forced her to perform oral sex, then forced her to have vaginal intercourse a second time). Therefore, although both acts included the same elements of the same statute, there is no double jeopardy violation. Petitioner is not entitled to relief on this issue.

C. Sufficiency of Evidence

Petitioner alleges that the evidence used to convict him for forcible rape was insufficient. (Rec. Doc. 20 at 8). The Supreme Court has held that when reviewing the sufficiency of evidence used to support a criminal conviction, the court must determine "whether the record evidence could reasonably support a finding of guilt beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 318 (1979). This requires that the court determine, "after viewing the evidence in the light most favorable to the prosecution," whether a rational trier of fact could have found "the essential elements of the crime beyond a reasonable doubt." *Id.* at 319. When the federal court reviews the trial evidence, the court need only consider the sufficiency of the evidence presented at trial.

*McDaniel v. Brown*, 134 558 U.S. 120, 131, 134 (2010).  The review of the sufficiency of the evidence does not include review of the credibility of the witnesses or the weight of the evidence, because those determinations are to be made by the jury. *U.S. v. Young*, 107 F. App'x 442, 443 (5th Cir. 2004)(citing *United States v. Garcia*, 995 F.2d 556, 561 (5th Cir. 1993)). A claim of insufficient evidence presents a "mixed question of fact and law." *Maes v. Thomas*, 46 F.3d 979, 988 (10th Cir. 1995). The determination of a mixed question of fact and law does not carry a presumption of correctness and must be reviewed de novo. *Id.*

Petitioner was charged with forcible rape, in violation of La. Rev. Stat. § 14:42.1.  At the time of these events, La. Rev. Stat. § 14:42.1 stated:

> Forcible rape is rape committed when the anal, oral or vaginal intercourse is deemed to be without the lawful consent of the victim because it is committed under any one or more of the following circumstances:
> (1) When the victim is prevented from resisting the act by force or threats of physical violence under circumstances where the victim reasonably believes that such resistance would not prevent the rape.

La. Rev. Stat. § 14:42.1.  In Louisiana, the credible testimony of the victim of a sex offense is enough to establish the elements of the offense. *State v. Hampton*, 97-2096, p. 3 (La. App. 1 Cir. 6/29/98); 716 So.2d 417, 418.

In the present case, M.C. testified that she was sitting in the living room of the house Petitioner shared with his mother, when Petitioner approached her. (St. Rec. Vol. 5 at 143). M.C. testified that Petitioner repeatedly asked M.C. to let him perform oral intercourse on her. (St. Rec. Vol. 5 at 156-57). When M.C. refused Petitioner's advances, Petitioner grabbed M.C.'s legs, pulled them over the arm of the chair, and "locked" her legs in his arms so that she could not get up. (St. Rec. Vol. 5 at 157-58, 160). M.C. testified that she again told Petitioner that she did not want to have sexual intercourse with him and pleaded with him to stop. (St. Rec. Vol. 5 at 162-63). M.C. testified that Petitioner then performed oral intercourse on M.C. against her will. (St. Rec. Vol. 5 at 163).

M.C. further testified that, after approximately ten minutes, Petitioner pulled down his pants and began to have vaginal intercourse with M.C. (St. Rec. Vol. 5 at 167-168). M.C. allegedly continued to tell him that she did not want to have intercourse with him. (St. Rec. Vol. 5 at 167-168). M.C. testified that Petitioner continued the intercourse for a long time before getting up and going to the bathroom. (St. Rec. Vol. 5 at 169-171). Petitioner allegedly returned to the room later and forced M.C. to have vaginal intercourse with him a second time. (St. Rec. Vol. 5 at 173-174).

M.C.'s testimony, which was accepted as true by the jury, satisfies the elements of forcible rape.  In the first act, both oral and vaginal intercourse occurred without M.C.'s lawful consent.  In the second act, vaginal intercourse occurred without M.C.'s lawful consent.  In both acts, M.C. was prevented from resisting when the Petitioner held her legs down and through the physical force used to accomplish sexual intercourse.  When viewed in the light most favorable to the prosecution, a rational jury could have found that M.C.'s testimony established the essential elements of both counts of forcible rape beyond a reasonable doubt. Petitioner is not entitled to relief on this claim.

    D.  <u>Motion for Mistrial</u>

Petitioner alleges that the trial court erred in failing to grant his motion for a mistrial after a state witness referenced Petitioner's criminal history. (Rec. Doc. 1-1 at 20). The decision of whether to grant a mistrial is within the discretion of the trial court. *State v. Pierce*, 11-320 (La. App. 5 Cir. 12/29/11); 80 So.3d 1267.  The trial court's denial of a motion for mistrial requires federal habeas corpus relief only if there was "error . . . so extreme that it constitutes a denial of fundamental fairness under the Due Process Clause." *Hernandez v. Dretke*, 125 F. App'x 528, 529 (5th Cir. 2005)(quoting *Bridge v. Lynaugh*, 838 F.2d 770, 772 (5th Cir. 1998)).  A trial is fundamentally unfair if there is a "reasonable probability that the verdict might have

been different had the trial been properly conducted." *Kirkpatrick v. Blackburn*, 777 F.2d 272, 279 (5th Cir. 1985).

While testifying at Petitioner's trial, Captain Justin Brown revealed that Petitioner was on parole at the time of his arrest. (Rec. Doc. 1-1 at 20).  Petitioner moved for a mistrial after the statement was made, but the trial court overruled this motion and instead admonished the jury to disregard the statement. (Rec. Doc. 20 at 8). Petitioner alleges that Captain Brown's statement damaged the Petitioner's credibility beyond repair. (Rec. Doc. 20 at 9).

The present issue is similar to an issue found in *U.S. v. Zamora*, 661 F.3d 200 (5th Cir. 2011).  In *U.S. v. Zamora*, a testifying witness briefly mentioned that the defendant in that case had a "criminal history."  *Zamora*, 661 F.3d at 206.  The defendant moved for a mistrial based on the witness's statement, but the trial court denied that motion.  *Id.* at 211.  The Fifth Circuit held that the trial court's denial of the defendant's motion for mistrial was proper, in part due to the isolated nature of the inadmissible testimony.  *Id.* at 211-12.  In regards to the isolated nature of the statement, the Fifth Circuit pointed out that the improper statement consisted of only one sentence throughout the entire trial, and that jury never heard anything else about the defendant's criminal history. *Id.*

In Petitioner's case, the trial court found that the statement in question was not made with intent to prejudice the Petitioner.

(Rec. Doc. 17 at 36).  Like the statement made in *Zamora*, Captain Brown's statement was isolated and Petitioner's parole history was never mentioned again.  Additionally, the statement included no details of any prior crime. (Rec. Doc. 17 at 36).  There is no evidence to support that Petitioner would have been found innocent had Captain Brown not made the statement.  Accordingly, it cannot be said that the trial court's decision denying Petitioner's motion for a mistrial was fundamentally unfair.  Petitioner is not entitled to relief on this issue.

E. Prosecutorial Misconduct

Petitioner alleges that a comment made by the prosecutor during the State's opening argument prejudiced the jury against the Petitioner and denied the Petitioner the right to a fair trial. (Rec. Doc. 1-1 at 24).  Specifically, the prosecutor told the jurors, "The State is going to ask you to put yourself into the mind of a 16-year-old girl, because that's what we are dealing with here." (Rec. Doc. 1-1 at 24). After Petitioner objected to this statement, the court admonished the jury to disregard the statement. (Rec. Doc. 17 at 40).

The Fifth Circuit has provided a two-step process for determining whether prosecutorial misconduct has occurred. *U.S. v. Wise*, 221 F.3d 140, 152 (5th Cir. 2000). First, the court must determine whether the prosecutor made an improper remark. *Id.* To determine whether a remark is improper, the court must look at the

context of those remarks. *Id.* If an improper remark was made, the court must determine "whether the remark affected the substantial rights of the defendant." *Id.* To prove that a remark prejudiced the substantial rights of a defendant, the petitioner must demonstrate "either persistent or pronounced misconduct or . . . [that] the evidence was so insubstantial that (in probability) but for the remarks no conviction would have occurred." *Kirkpatrick v. Blackburn*, 777 F.2d 272, 281 (5th Cir. 1985).

The first inquiry is whether the prosecutor made an improper remark. The Supreme Court of Louisiana has held that it is improper for "the prosecutor to make the jurors think of themselves as crime victims." *State v. McClinton*, 399 So.2d 178, 182 (La. 1981). Thus, by asking the jury to put themselves in the mind of the victim, the prosecutor in the present case made an improper remark. The second inquiry is whether the improper remark affected the Petitioner's substantial rights. The comment in question was not made persistently, nor was the comment pronounced; it was a single comment that was struck. (Rec. Doc. 1-1 at 25). Further, there is no evidence to suggest that Petitioner would not have been convicted but for the prosecutor's improper remark. Therefore, although the prosecutor made an improper remark, that remark did not affect the Petitioner's substantial rights. Accordingly, the Petitioner is not entitled to relief on this issue.

F. Communication with the Jury

Petitioner alleges that his conviction was prejudiced by ex parte communication between the jurors and a former sheriff. (Rec. Doc. 1-1 at 26). Due Process requires that the criminally accused be tried by an impartial jury. *Irvin v. Dowd*, 366 U.S. 717, 722 (1961). "Any private communication [or] contact . . . with a juror" *about* the case pending before the jury is presumptively prejudicial. *Remmer v. U.S.*, 347 U.S. 227, 229 (1954). Although the presumption is not conclusive, the government bears the burden of establishing that such contact was harmless. *Id.* To determine whether harm occurred, the trial court should "determine the circumstances, the impact thereof upon the juror, and whether or not it was prejudicial." *Id.* at 230.

Petitioner alleges that, during the State's closing arguments, Petitioner saw some of the jurors nodding their heads "yes" and saw a male juror "making hand signs" to Mike Miller, the former sheriff of Washington Parish. (Rec. Doc. 1-1 at 26). Petitioner states that the former sheriff gestured back at the jurors. (Rec. Doc. 1-1 at 27). Further, Petitioner states that the former sheriff was wearing a visitor's badge from the District Attorney's Office. (Rec. Doc. 1-1 at 27). Nonetheless, Petitioner has presented no evidence to suggest that the alleged communication between former Sheriff Miller and the jury during the trial was related to the case. Even if the communication was, as Petitioner

describes it, an exchange of "pleasantries," there is no indication that harmless pleasantries included references to the pending case. Petitioner is not entitled to relief on this issue.

G. Lesser Included Offenses

Petitioner alleges that the trial court failed to charge the jury on lesser included offenses applicable to his case under La. Code. Crim. P. art. 814. Generally, the determination of whether an offense should be included in jury instructions as a lesser included offense is a question of state law. *Ortega v. Stephens*, 794 F.3d 250, 253 n.3 (5th Cir. 2015). Improper jury instructions in state criminal trials usually do not form a basis for federal habeas relief. *Galvan v. Cockrell*, 293 F.3d 760, 765 (5th Cir. 2002). In examining habeas claims of improper jury instructions, the proper inquiry is whether the error caused "prejudice of constitutional magnitude." *Id.* at 764. Accordingly, the court must determine whether the failure to give an instruction "by itself so infected the entire trial that the resulting conviction violates due process." *Cupp v. Naughten*, 414 U.S. 141, 147 (1973).

At the time of the Petitioner's prosecution, La. Code. Crim. P. art. 814 listed the following responsive verdicts: "Guilty. Guilty of attempted forcible rape. Guilty of simple rape. Guilty of attempted simple rape. Guilty of sexual battery. Not guilty." La. Code Crim. P. art. 814 (A)(10). Nevertheless, the state trial court failed to include the responsive verdicts for simple rape or

attempted simple rape in its jury instructions. (St. Rec. Vol. 6).[3]

Simple rape, now known as third degree rape, is defined as oral, anal, or vaginal intercourse when one or more of the following apply:

> 1) The victim is incapable of resisting or understanding the nature of the act due to the influence of an intoxicating agent or other narcotic not known to the victim or administered by the offender and the offender knew or should have known of the victim's incapacity;
> 2) The victim is incapable of resisting or understanding the nature of the act due to temporary or permanent unsoundness of mind and the offender knew or should have known of the victim's incapacity;
> 3) The victim believed the person to be her spouse and that belief was intentionally induced by the offender.

La. Rev. Stat. § 14:42(A). If there is no evidence to reasonably support a verdict, that verdict "may be excluded as a possible responsive verdict." *State v. Taylor*, 34,096-KA, p. 12 (La. App. 3 Cir. 12/15/00); 774 So.2d 379, 387.

None of the facts in this case support a verdict of simple rape or attempted simple rape. No evidence was presented to demonstrate that M.C. was under the influence, of unsound mind, or married and believed Petitioner to be her husband. Accordingly, there is no reason to include simple rape or attempted simple rape

---

[3] The court instructed the jury that the available verdicts to be returned in the case were: "Guilty. Guilty of attempted forcible rape. Guilty of sexual battery. Not guilty."

as responsive verdicts in Petitioner's case.  Further, Petitioner has not demonstrated that the failure to include simple rape and attempted simple rape in the jury instructions infected the trial to the extent that the resulting conviction violates Petitioner's due process.  Petitioner is therefore not entitled to relief on this issue.

### H. Ineffective Assistance of Counsel Claims

Petitioner asserts multiple ineffective assistance of counsel claims.  *Strickland v. Washington* provides a two-part test for evaluating claims of ineffective assistance of counsel.  First, the defendant must demonstrate that "counsel's representation fell below an objective standard of reasonableness." *Strickland v. Washington*, 466 U.S. 668, 687-88 (1984).  On habeas review, the proper inquiry for the first step of the *Strickland* test is whether an attorney's representation would be considered incompetent under prevailing professional norms. *Harrington v. Richter*, 562 U.S. 86, 105 (2011).

Second, the defendant must prove "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694.  Reasonable probability is defined as "a probability sufficient to undermine confidence in the outcome." *Id.* A defendant must satisfy both prongs of the *Strickland* test to prevail on an ineffective assistance of counsel claim. *See U.S. v. Kimler*, 167

F.3d 889, 893 (1999) (holding that because defendant suffered no prejudice from his attorney's failure to raise meritless claims, it was not necessary to consider both steps).

Additionally, there is a presumption that the attorney's conduct "falls within the wide range of reasonable professional assistance." *Strickland v. Washington*, 466 U.S. 668, 689 (1984). Deference is given to the counsel's performance. *Id.* Assessment of an attorney's performance "requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Id.* A tactical decision that is supported by the circumstances is "objectively reasonable, and therefore does not amount to deficient performance." *Rector v. Johnson*, 120 F.3d 551, 564 (5th Cir. 1997) ("A tactical decision not to pursue and present potential mitigating evidence on the grounds that it is double-edged in nature is objectively reasonable, and therefore does not amount to deficient performance.").

### 1. Right to Testify

Petitioner claims that defense counsel refused to allow him to testify. Rec. Doc. 20 at 19. It has long been established that a criminal defendant has a constitutionally protected right to testify on his own behalf. *Rock v. Arkansas*, 483 U.S. 44, 49 (1987). However, "allowing a bare assertion of a right-to-testify

violation to precipitate the further investment of judicial resources is problematic." *United States v. Martinez*, 181 F.3d 627, 628 (5th Cir. 1999)(citing *Underwood v. Clark*, 939 F.2d 473, 475-76 (7th Cir. 1991)). Accordingly, a habeas petitioner's "vague and conclusory assertion alone should [not] be allowed to trigger a hearing or response from the government." *Martinez*, 181 F.3d at 628.

Petitioner has provided no substantiation to support his claim that his attorney forbade him from testifying. His own testimony is not enough to support this claim. Accordingly, without any other evidence to prove that his attorney forbade him from testifying, Petitioner has no relief on this issue.

### 2. Pre-Trial Investigation

Petitioner alleges that his counsel was ineffective because counsel failed to investigate the crime scene and failed to challenge the credibility of M.C. by questioning other individuals. (Rec. Doc. 20 at 20). When a defendant claims that his counsel has failed to investigate, that defendant "must allege with specificity what the investigation would have revealed and how it would have altered the outcome of the trial." *U.S. v. Green*, 882 F.2d 999, 1003 (5th Cir. 1989). Further, a defendant must "show that counsel's failure to follow up on his leads was unreasonable." *Id. at 1002* (stating that Defendant failed to demonstrate prejudice because he failed to specifically address

"what exculpatory evidence could have been uncovered by a more thorough investigation by his counsel, and has failed to show that counsel's failure to follow up on his leads was unreasonable").

In regards to Petitioner's claim that his counsel failed to investigate the scene of the rape, Petitioner has not addressed what that investigation would have revealed or how it would have affected the trial's result. Additionally, defense counsel questioned witnesses about the home in which the rape occurred. (Rec. Doc. 1-15 at 48 – 50; Rec. Doc. 1-16 at 15). Accordingly, defense counsel had some knowledge of the structure of the home into account, despite not physically investigating the scene of the rape.

Petitioner further alleges that his attorney failed to interview two witnesses, Petitioner's niece, K.E., and Petitioner's sister, L.E., who were both aware of instances in which M.C. had made false allegations. (Rec. Doc. 20 at 20). Petitioner alleges that his attorney told Petitioner that he would be interviewing K.E. and L.E. before the trial. (Rec. Doc. 20 at 20). Petitioner claims that his attorney failed to call either of these potential witnesses to testify on behalf of the defense, and was not prepared to cross-examine these witnesses about the prior false allegations. (Rec. Doc. 20 at 20).

A defendant's complaint of uncalled witnesses is not favored, "because the presentation of testimonial evidence is a matter of

trial strategy and because allegations of what a witness would have testified are largely speculative." *Buckelew v. United States*, 575 F.2d 515, 521 (5th Cir. 1978). Accordingly, in order to challenge defense counsel's failure to call a witness, Petitioner "must name the witness, demonstrate that the witness was available to testify and would have done so, set out the content of the witness's proposed testimony, and show that the testimony would have been favorable to a particular defense." *Day v. Quarterman*, 566 F.3d 527, 538 (5th Cir. 2009). Petitioner names two witnesses (K.E. and L.E.) and demonstrates that these witnesses testified on behalf of the State. (Rec. Doc. 20 at 20). Petitioner alleges that K.E. and L.E. could corroborate Petitioner's assertions that M.C. had made false allegations in the past, which would have hurt M.C.'s credibility. (Rec. Doc. 20 at 20).

Defense counsel's decision not to attack the victim's credibility in this manner was within his discretion. Further, there is no evidence to support the claim that the victim has previously made false allegations of sexual abuse. Petitioner's claim that such allegations were made is not enough. *See State v. Wallace*, 788 So.2d 578, 587 (5th Cir. 2001)(in a case in which there is no proof that the victim made prior allegations of sexual abuse, the defendant's mere assertions that such statements were made and were false were not enough to allow reasonable jurors to find that the victim had made prior false accusations).

It should also be noted that in his habeas petition, Petitioner mentioned that his girlfriend, Jennifer Mathis, would have testified that Petitioner was with her on the night and at the time of the rapes. (Rec. Doc. 1 at 42-43). In his Report and Recommendation, the Magistrate Judge noted that, had Petitioner's counsel called Petitioner's girlfriend to provide an alibi, that alibi would have conflicted with Petitioner's entire defense theory. (Rec. Doc. 17 at 60).[4] Additionally, Petitioner did not object to the Magistrate Judge's recommendations in regards to this particular claim.  Because Petitioner did not object to this portion, the Magistrate Judge's recommendation as to this claim should be accepted, as it is reasonable given the circumstances.

### 3. Pretrial Motions

In his habeas petition, Petitioner claims that counsel was ineffective for failing to file numerous pretrial motions, including a motion to suppress, a motion for a speedy trial, or a motion to quash. (Rec. Doc. 1-1 at 2).  The Magistrate dismissed this claim because Petitioner offered no reason for counsel to file those motions, nor did Petitioner prove that these motions had any merit.  In his objection, Petitioner did not object to the

---

[4] Petitioner's defense theory was that no rape had occurred and that if it had, his mother would have heard the noise.  Further, Petitioner's mother testified that Petitioner was at home sleeping.  Calling Petitioner's girlfriend to provide a different alibi would have conflicted with this.

Magistrate Judge's findings.  Accordingly, the recommendation as to these claims should be accepted.

### 4. <u>Qualifications of Forensic Interviewer</u>

Petitioner alleges that his attorney should have challenged the qualifications of Bethany Case, who Petitioner claims was the State's expert on child abuse cases. (Rec. Doc. 1 at 45). It should be noted that Case was not offered as an expert in child sexual abuse cases, but was offered (and deemed qualified by the trial court) to be an expert in forensic interviewing and social work. (St. Rec. Vol. 5 at 246, 252).

In the Report and Recommendation, the Magistrate Judge noted that Petitioner's counsel did object to Case's qualifications. (Rec. Doc. 17 at 66). Counsel's objection to Case's qualifications was overruled.  The Magistrate Judge cited *Martinez v. Dretke*, which states that the fact that a challenge was not successful does not render counsel's performance constitutionally deficient or prejudicial. *See Martinez v. Dretke*, 99 F. App'x 538, 541 (5th Cir. 2004)("[A]n unsuccessful strategy does not necessarily indicate constitutionally deficient counsel."). The Magistrate Judge concluded that Petitioner did not establish that his counsel was deficient in regards to this issue and that Petitioner is not entitled to relief on this claim. (Rec. Doc. 17 at 66).  In his objection to the Report and Recommendation, Petitioner does not respond to the portion of the Recommendation that addresses the

credibility of Case. Accordingly, the Magistrate Judge's recommendation as to this portion of the claim should be accepted.

### 5. No Expert Witness for the Defense

Petitioner claims that his counsel should have sought out for the hire of an independent forensic expert to rebut Case's testimony. (Rec. Doc. 1 at 43). "The government is not required to automatically provide indigent defendants with expert assistance upon demand." *Yohey v. Collins*, 985 F.2d 222, 227 (5th Cir. 1993). When an indigent defendant requests a non-psychiatric expert, that defendant "must demonstrate something more than a mere possibility of assistance from a requested expert." *Id.*

Petitioner states that because his counsel was unfamiliar with forensic interviewers regarding sexual abuse allegations, his attorney should have consulted an expert in order to properly cross-examine Case. (Rec. Doc. 20 at 23). Petitioner has provided no evidence to demonstrate that his counsel needed expert assistance in interviewing Case. Because deference is given to the attorney's performance, Petitioner is not entitled to relief on this issue.

### 6. Challenge to the Credibility of M.C. and K.E.

Petitioner alleges that defense counsel was ineffective for failing to attack the credibility of M.C. and K.E. and for failing to object to statements made by K.E. to police. (Rec. Doc. 1 at

47).[5] In regards to the former, Petitioner did not object to the Report and Recommendation, which states that Petitioner's counsel thoroughly questioned M.C. and K.E. at trial.  In regards to the latter, Petitioner made no objection to the Report and Recommendation, which states that there was no reason for defense counsel to object to or move to suppress K.E.'s testimony or statement, because both the testimony and statement were used to contribute to the defense's theory.  Because Petitioner does not object to either of these issues, the Magistrate Judge's recommendation should be accepted, as it is reasonable given the evidence on the record.

   7. Challenge to the Bill of Information on Double Jeopardy
      Grounds

   In his habeas petition, Petitioner claims that defense counsel was ineffective for failing to challenge the Bill of Information, which charged Petitioner for two counts of forcible rape. (Rec. Doc. 1-1 at 4). Petitioner's argument here stems from the double jeopardy argument that was discussed above. As previously mentioned, Petitioner's double jeopardy allegations are without merit, such that Petitioner's attorney had no reason to object to the Bill of Information. *See State v. Richardson*, 780 So.2d 1103, 1110 (La. App. Ct. 4th Cir. 2001) ("The failure of counsel to raise a meritless argument of error cannot be

---

[5] Petitioner also alleges that defense counsel was ineffective for failing to investigate the alleged rapes.  This claim has already been addressed.

ineffective assistance of counsel."). Petitioner does not object to this issue. Accordingly, the recommendation to dismiss this claim should be accepted.

### 8. Failure to Move to Recuse the Trial Judge

Petitioner alleges that counsel was ineffective for failing to move to recuse the state trial judge. (Rec. Doc. 1-1 at 5). The trial judge was a prosecutor and witness in a previous case against Petitioner, which was eventually dismissed. (Rec. Doc. 1-1 at 5-6). Additionally, the trial judge was the sentencing judge in Petitioner's 2009 criminal case. (Rec. Doc. 1-1 at 5).

According to La. Code Crim. P. art 671:

> A. In a criminal case a judge of any court, trial or appellate, shall be recused when he:
> (1) Is biased, prejudiced, or personally interested in the cause to such an extent that he would be unable to conduct a fair and impartial trial;
> (6) Would be unable, for any other reason, to conduct a fair and impartial trial.

La. Code Crim. P. art 671. Further, "a trial judge is presumed to be impartial, and the burden is on the defendant to prove otherwise." *State v. White*, 42-725, p. 10-11 (La. App. 2 Cir. 10/24/07); 968 So.2d 901, 907.

Petitioner has presented no evidence to show that his history with the trial judge caused the judge to hold any bias against him. There is no merit to this argument. Likewise, there is no merit to Petitioner's allegation that his counsel was ineffective

for failing to investigate and research viable reasons to have the trial judge recused.  (Rec. Doc. 20 at 25).  As stated previously, the failure of counsel to raise a meritless argument does not constitute ineffective assistance of counsel.  Accordingly, this Court adopts the recommendation of the Magistrate Judge and dismisses this claim.

 9. <u>Notification of a Plea Deal</u>

Petitioner claims that his attorney failed to inform Petitioner of a plea bargain offered by the state. (Rec. Doc. 1-1 at 7). Generally, "defense counsel has the duty to communicate formal offers from the prosecution to accept a plea on terms and conditions that may be favorable to the accused." *Missouri v. Frye*, 132 S. Ct. 1399, 1408 (2012).  If counsel fails to communicate a formal plea offer, the court must determine whether the defendant was prejudiced by that failure. *Id.* at 1409.

In order for Petitioner to demonstrate prejudice from failure to communicate a plea offer, Petitioner must demonstrate "a reasonable probability they would have accepted the earlier plea offer had they been afforded effective assistance of counsel," "a reasonable probability the plea would have been entered without the prosecution canceling it or the trial court refusing to accept it," and "a reasonable probability that the end result of the criminal process would have been more favorable by reason of a plea to a lesser charge or a sentence of less prison time." *Id.*

Petitioner alleges that defense counsel informed Petitioner's sister of an offer to plea bargain, but did not convey that plea to Petitioner.  Rec. Doc. 1-1 at 7.  Petitioner has thus far provided no evidence to support his allegation that a plea offer was offered to his sister.  Petitioner claims that he could prove this allegation at an evidentiary hearing. Rec. Doc. 1-1 at 8.

28 U.S.C. § 2254(e)(2) limits the discretion of federal habeas courts to take new evidence in an evidentiary hearing. *Cullen v. Pinholster*, 563 U.S. 1388, 1400-01 (2011). Specifically, 28 U.S.C. § 2254(e)(2) states that an evidentiary hearing is allowed only if Petitioner's claim relies on (1) "a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court"; (2) "a factual predicate that could not have been previously discovered through due diligence"; or (3) if the facts "would be sufficient to establish by clear and convincing evidence that but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense." 28 U.S.C. § 2254(e)(2). Petitioner has not satisfied any of the exceptions listed in 28 U.S.C. § 2254(e)(2). Accordingly, Petitioner is not entitled to an evidentiary hearing on this matter.

Petitioner has provided no evidence to this court or to the state court to support his claim that a plea offer was made to his

sister.  Additionally, Petitioner has not asserted that he would have accepted a plea offer if there had been one.  On the contrary, Petitioner has repeatedly stressed his innocence throughout these proceedings (Rec. Doc. 1 at 43, Rec. Doc. 1-1 at 19).   Because Petitioner has no evidence to support his allegation that a plea offer was ever made to his sister, and because Petitioner has not shown that he would have accepted any plea offer made by the government, Petitioner is not entitled to relief on this issue.

> 10.   Failure to Challenge Former Sheriff's Communication with the Jury.

Petitioner alleges that his attorney failed to challenge former Sheriff Miller's ex parte communication with the jury. (Rec. Doc. 1-1 at 28). However, it has been established that any communication that occurred, which Petitioner alleges included "hand-signs," was not related to the case at hand.  Accordingly, this alleged communication was not prejudicial towards Petitioner, and not considered to be prohibited ex parte communication. Because the alleged communications between the former sheriff and the jury are not considered prohibited ex parte communication, defense counsel had no reason to object to this alleged communication or to move for a mistrial. *See State v. Richardson*, 2000-0416 (La. App. 4 Cir. 2/7/01); 780 So.2d 1103, 1110 ("The failure of counsel to raise a meritless argument of error cannot

be ineffective assistance of counsel."). Accordingly, Petitioner is not entitled to relief on this issue.

I. Petitioner's Unenumerated Claim

In the Report and Recommendation, the Magistrate Judge noted that Petitioner repeatedly suggested in his habeas petition that he should be given relief and substantive review of his claims because the state courts did not provide him with counsel to develop his claims further. (Rec. Doc. 17 at 13). The Report and Recommendation correctly states that Petitioner has misinterpreted *Martinez v. Ryan* and that Petitioner is not entitled to an attorney for post-conviction review. (Rec. Doc. 17 at 13-14). Petitioner objects to this section of the Report and Recommendation, arguing that the court must appoint counsel during the course of collateral review if the Petitioner is claiming ineffective assistance of counsel. (Rec. Doc. 20 at 18).

*Martinez* is inapplicable to this case. In *Martinez*, the Supreme Court held that "where, under state law, ineffective-assistance-of-trial-counsel claims must be raised in an initial-review collateral proceeding, a procedural default will not bar a federal habeas court from hearing those claims if, in the initial-review collateral proceeding, there was no counsel or counsel in that proceeding was ineffective." *Martinez v. Ryan*, 132 S. Ct. 1303, 1320 (2012). As expressed in the Report and Recommendation

(Rec. Doc. No. 17 at 14), no part of the *Martinez* holding applies to Petitioner's case.

Additionally, in *United States v. Coleman*, the Supreme Court held that "there is no constitutional right to an attorney in state [court] post-conviction proceedings." *Coleman v. Thompson*, 501 U.S 722, 752 (1991)(stating that, "consequently, a petitioner cannot claim constitutionally ineffective assistance of counsel in such proceedings" as where there is no constitutional right to counsel, there can be no deprivation of effective assistance). Accordingly, Petitioner is not entitled to an attorney in his post-conviction proceedings, and is therefore not entitled to relief on this issue.

## VIII. CONCLUSION

For the reasons enumerated above, **IT IS ORDERED** that the Magistrate's Report and Recommendation is **ADOPTED**, overruling objections to same, and that the petition for writ of habeas corpus is **DISMISSED WITH PREJUDICE.**

New Orleans, Louisiana, this 13th day of July, 2016.

SENIOR UNITED STATES DISTRICT JUDGE